HARRISON vs. THE BOARD OF SUPERVISORS OF MILWAUKEE COUNTY, imp.

*March 5 — April 19, 1881.*

INJUNCTION. *(1) When mandatory injunction grantable. (8) When proper remedy is by action at law.*

CONSTITUTIONAL LAW. *(2) Private or local bill: unity of subject: title. (3) Taking private property without compensation. (4) "Altering" highway. (5) When unconstitutional provision does not invalidate the whole statute: Who may object to unconstitutional statute.*

PUBLIC CORPORATIONS: HIGHWAYS. *(7) When corporation not liable for damages to land from construction of highway.*

1. Before defendants had actually encroached upon his land by extending over it a part (in width) of a highway which they were constructing, plaintiff brought suit to restrain them from so doing. An order being made restraining them from so encroaching *pendente lite*, upon condition that plaintiff furnish security in a large sum, he declined to furnish it; and defendants made the threatened encroachment pending the action, without compensation for the land taken. On trial of the action, the

court granted a mandatory injunction requiring defendants to remove so much of the highway as was upon plaintiff's land. *Held*, no error, plaintiff not having forfeited his right to such relief at the final hearing, by his failure to take advantage of the temporary injunction.

2. Ch. 51, Laws of 1878, is entitled "An act to provide for the improvement of" a certain highway (described by name) "in Milwaukee county, and to repeal" certain specified acts of previous years, which relate to that highway. It provides, among other things, for the erection of a bridge across such highway by a certain railway company whose track crosses the same; for legalizing certain acts of the county board treating said highway as a county road; for the construction, by the county board, of a viaduct and turnpikes as parts of said highway; for paying the cost of building the highway, including damages to adjoining lands, partly by a special county tax, and partly by special assessments on adjoining lands, prescribing the mode of making and appealing from such assessments; and for the repeal of former statutes relating to the same highway. *Held*, that the act embraces but one subject, and that this is sufficiently expressed in the title, within the intent of the constitutional requirement on that subject.

3. The act does not require the county to take, nor apparently contemplate its taking, any private property for use in the construction of such highway; and is not, therefore, invalid as providing for such taking without just compensation.

4. The " altering " of a highway intended by the constitutional amendment which forbids the passage of a special or private law " for laying out, opening *or altering* highways," is an altering of its *course*, and not a change of its grade; and an act which provides for the *improvement* (without altering its course) of a highway laid out and opened before the adoption of that amendment, is not affected by it.

5. If so much of the act as provides for an assessment of part of the cost of the improvement upon adjoining lands is void as contravening subd. 6, sec. 31, art. IV of the constitution as amended (a point not decided), still this does not render the whole act void, nor make the county supervisors mere trespassers in changing the grade of said road adjoining plaintiff's land; nor can a person not affected by the supposed unconstitutional provision of the act set it up as ground for an injunction.

[6. *It seems* that, independent of the special act of 1878, the county of Milwaukee might have made the improvement in question under the general statute (sec. 115, ch. 19, R. S. 1858, as amended by sec. 1, ch. 13, Laws of 1866; Tay. Stats., pp. 511-12, § 151; ch. 152 of 1872; ch. 282 of 1876; ch. 252 of 1877; R. S., sec. 1308); although it was not empowered by that statute to raise by taxation more than $800 annually to pay therefor.]

7. It is the settled law of this state that, in the absence of any statute conferring such a right, the owners of land adjoining a public highway cannot recover damages of a public corporation on account of any change in the grade of such highway, except for injuries caused by negligence in making the change; and such change of grade is not in any case a *taking* of private property for public use.

8. If the act of 1878 provides that adjoining owners may recover damages for injuries to their lands from the construction of the improvement here in question (a point not decided), that right is to be enforced by *an action at law*, and is no ground for *enjoining* the work until the damages are paid.

APPEALS from the County Court of *Milwaukee* County. These are cross appeals from the same judgment. The case is thus stated by Mr. Justice TAYLOR:

"This was an action brought by *Stephen A. Harrison* against the board of supervisors of Milwaukee county — *Jonas I. Fraunfelter, Frederick Nieman* and *Julius G. Wagner,* — for the purpose of restraining them from making an improvement upon a highway in said county by filling up and constructing a trestle-work over a ravine across which said road passed, and adjoining which the plaintiff. owned real estate.

"The grounds of the complaint were, that the defendants were doing the work without any authority of law; that the filling and trestle-work would render the highway inaccessible from plaintiff's lands; and that defendants proposed to occupy some of plaintiff's land outside of said highway with their embankment and work, without authority of law, and without making any compensation therefor. In the action an order was made granting an injunction pending the litigation, but conditioned upon the plaintiff giving a large bond to indemnify the county if the same should not be made perpetual. The plaintiff declined to give the bond, and no injunction was granted until after the hearing of the case.

"Upon the hearing, it appeared to the court that the county board and its contractors, the other defendants, in making the fill in said highway, had made the same so wide that the base

of it on the side next to the plaintiff's land extended beyond the line of the highway and upon his land several feet; and it also appearing that the county had made no compensation to the plaintiff for such land, the county court adjudged that the plaintiff was entitled to a mandatory injunction, ordering the county board to remove so much of the embankment as extended beyond the limits of the highway and rested upon the plaintiff's land outside of said limits. And as to the other relief demanded by the plaintiff, his complaint was dismissed. Judgment was rendered in favor of the plaintiff, with costs. Both parties excepted to some of the findings of fact and conclusions of law, and both appeal from the judgment."

*Frank B. Van Valkenburgh,* for the plaintiff:

I. The defendants are trespassers, and their work is a public nuisance, which the plaintiff was entitled to have restrained and may have abated. The county has no right to occupy the road in question, unless it be under the authority given by ch. 51, Laws of 1878. That act is unconstitutional, for the following reasons: 1. It is a local bill, and embraces several distinct subjects, most of which are not expressed in its title. Const. of Wis., art. IV, sec. 18. Such failure in the title to express the object and intent of the legislature was calculated to mislead, and did in fact mislead, some persons to their injury. *Durkee v. Janesville,* 26 Wis., 697; *Mills v. Charleton,* 29 id., 409; *Yellow R. Imp. Co. v. Arnold,* 46 id., 214. 2. It provides for the alteration of a highway, and for the collection, not only of a general county tax, but of special assessments on property supposed to be benefited by such alteration. It is therefore within the prohibition of sec. 31, art. IV of the constitution. *Kimball v. Rosendale,* 42 Wis., 407. 3. It provides for taking private property for public use without compensation, by authorizing the building of a viaduct along plaintiff's entire front, at an inaccessible height, in such a way as to amount to a practical confiscation of his entire estate. Mills on Em. Dom., § 30, etc.; Const. of Wis., art. I, sec. 13;

id., art. XI, sec. 2.  See *Shepardson v. R. R. Co.*, 6 Wis., 615; *Weeks v. Milwaukee*, 10 id., 269; *Johnson v. Milwaukee*, 40 id., 324; *Bohlman v. G. B. & L. P. R'y Co.*, 30 id., 107; *Norton v. Peck*, 3 id., 714; *Lumsden v. Milwaukee*, 8 id., 485; *Hood v. Finch*, id., 381; *Power v. Bears*, 12 id., 213; *Wilson v. Mineral Point*, 39 id., 160; *Brock v. Hishen*, 40 id., 674; *Lyon v. Railway Co.*, 42 id., 538; *Goodall v. Milwaukee*, 5 id., 38; 2 High on Inj., ch. IX.  4. It fails to provide for giving notice to the owners of property, of the assessment of benefits ordered to be made for the doing of the work, or that their property was to be taken for the public use. *Seifert v. Brooks*, 34 Wis., 443; *Flint v. Fond du Lac*, 42 id., 298.  5. The power to make special assessments for the improvement of highways is in conflict with the constitutional rule of uniformity of taxation.  Const. of Wis., art. VIII, sec. 1.  That rule is modified by sec. 3, art. XI, as to cities and villages, but not as to counties.  See *Weeks v. Milwaukee*, 10 Wis., 259; *Lumsden v. Cross*, id., 284.  II. The testimony and findings show that the defendant has created a public nuisance which works private and special injury to the plaintiff.  In such a case the court will interfere by injunction. *Walker v. Shepardson*, 2 Wis., 384; *Barnes v. Racine*, 4 id., 454; *Williams v. Smith*, 22 id., 595; *Pettibone v. Hamilton*, 40 id., 416; *Porter v. Menasha*, 30 id., 492.  An obstruction which prevents the lawful use of a public street or highway, besides being a public nuisance, is a special injury to the adjoining lot-owners; and when such an obstruction is threatened, they may proceed in equity to prevent it.  R. S., sec. 3180; Story's Eq. Jur., § 102; *Penniman v. N. Y. Balance Co.*, 13 How. Pr., 40; *Corning v. Lowerre*, 6 Johns. Ch., 439; *Manhattan Gaslight Co. v. Barker*, 36 How. Pr., 233; *Greene v. Nunnemacher*, 36 Wis., 50; *Potter v. Menasha*, 30 id., 492; *Harper v. Milwaukee*, id., 365.  Owners of lots adjoining a public highway have a right to free access to their lands and buildings from the street as the same was and would have

continued to be, according to the mode of its original use and appropriation by the public; and there can be no change of such mode which shall materially impair or destroy such right unless by the consent of the owners, or upon payment of due compensation to them. *Hobart v. R. R. Co.*, 27 Wis., 200; *People v. Kerr*, 27 N. Y., 215; *Street Railway v. Cumminsville*, 14 Ohio St., 523; *Goodall v. Milwaukee*, 5 Wis., 32; *Alexander v. Milwaukee*, 16 id., 247; *Arimond v. Canal Co.*, 31 id., 335; *Dore v. Milwaukee*, 42 id., 108. See also Mills on Em. Dom., §§ 206, 207; *Haynes v. Thomas*, 7 Ind., 38; *Protzman v. R. R. Co.*, 9 id., 467; *Tate v. R. R. Co.*, 7 id., 479; *Fletcher v. R. R. Co.*, 25 Wend., 462; *E., L. & B. S. R. R. Co. v. Combs*, 10 Bush, 382; *Wetmore v. Story*, 22 Barb., 414; 3 Abb. Pr., 262; *Milhau v. Sharp*, 27 N. Y., 611; 7 Abb. Pr., 220; *Brower v. Mayor*, 3 Barb., 254; *Richards v. R. R. Co.*, 18 Iowa, 259; *Davis v. R. R. Co.*, 12 Wis., 16; *Ford v. Railroad Co.*, 14 id., 617. III. The court may grant any relief consistent with the case made, and the fact that inconvenience would arise is no reason for denying to plaintiff his constitutional rights. *Pettibone v. R. R. Co.*, 14 Wis., 443; *Corning v. Troy Iron Factory*, 34 Barb., 485; *Supervisors of Iowa Co. v. Railroad Co.*, 24 Wis., 93; *Amory v. Amory*, 26 id., 152; *Leonard v. Rogan*, 20 id., 540. Plaintiff commenced his action as soon as possible after learning the intention of the county to obstruct the highway. The fact that he failed to give the bond and take the injunctional order, is no evidence of an intention to abandon his rights. In the following, among other cases, injunctions have been made mandatory: *Croton Turnpike Co. v. Ryder*, 1 Johns. Ch., 611; *Livingston v. Van Ingen*, 9 Johns., 507; *Krehl v. Burrell*, L. R., 7 Ch. D., 551.

*W. C. Williams*, for the defendant, argued, among other things, that the plaintiff, having waived his right to the preliminary injunction restraining the commencement of the work, by neglecting to file the required bond, is not now entitled to

a mandatory injunction for the removal of the completed improvement. An injunction is essentially a preventive remedy, and will not be granted where a trespass is entirely completed so that its effect may be measured in damages. High on Inj., § 477; *Isenberg v. East India House*, 33 L. J., Ch., 392; *Durell v. Pritchard*, L. R., 1 Ch. App., 242; *Wilson v. Mineral Point*, 39 Wis., 160; Kerr on Inj., 330; Joyce on Inj., 101; *Doran v. Carroll*, 11 Irish Ch., 379; *Fisher v. Board of Trade*, 80 Ill., 85; *Attorney General v. R. R. & T. Co.*, 3 N. J. Eq., 141; *Lexington City N. B'k v. Gwynn*, 6 Bush, 486. The same rule applies in cases of nuisance, especially where the nuisance is a private one, and a court of law can afford adequate relief. *Milhau v. Sharp*, 28 Barb., 228; *Crump v. Lambert*, L. R., 3 Eq., 409; *Richards's Appeal*, 57 Pa. St., 105; *Coe v. Manufacturing Co.*, 37 N. H., 254; *Parker v. Lake Winnipiseogee Lake C. and W. Co.*, 2 Black, 545. Nor will an injunction be granted where, as in this case, the inconvenience is slight as compared with the great public benefit resulting from the work. Kerr on Inj., 231; High on Inj., §§ 488, 495; *Jacomb v. Knight*, 32 L. J., Ch., 601; *Morris & Essex R. R. Co. v. Prudden*, 20 N. J., 530; *Attorney General v. Railway Co.*, L. R., 6 Eq., 106; *Higbee v. R. R. and T. Co.*, 20 N. J., 435; *Attorney General v. Perkins*, 2 Dev. Eq., 38.

TAYLOR, J. The board of supervisors, upon their appeal, insist that no mandatory injunction should have been granted requiring them to remove so much of the embankment as rests upon the plaintiff's land outside of the limits of the highway. The reason urged is, that the court made an order granting the plaintiff a preliminary injunction to prevent them from extending their embankment upon the plaintiff's land, before any work had been done, and that the plaintiff refused or neglected to render such order effectual by giving the bond required, and permitted the work to go on. It is said that the plaintiff is in

no better position than he would have been had he lain by and permitted the work to be done, and then commenced an action to compel the defendants to remove the embankment; and it is claimed that in such case a court of equity would not interfere, but compel the plaintiff to seek his remedy in an action at law, and that by such action he would have an adequate remedy for all the damages sustained by him.    There is some force in this suggestion, and had the plaintiff permitted the work to be done before filing any complaint asking the court to restrain the defendants, we should have very grave doubts whether a court of equity would interfere for the purpose of compelling a removal of the embankment.    In such case, the defendant having done all he proposed to do, and what he had done being in the nature of a simple trespass, the court would probably leave the plaintiff to his action for damages.

But the plaintiff filed his complaint before the work was done, asking that the defendants be restrained from doing it; and, the plaintiff having made out a case entitling him to the relief asked, we are of the opinion that he did ·not forfeit his right to an injunction by failing to give the bond which would have entitled him to the preliminary one, and that the defendant acquired no rights because the work was done *pendente lite*.    That the plaintiff was of sufficient means to have readily procured such bond, we do not think has any bearing on the case.    By the commencement of his action in due time, the plaintiff gave the defendants notice that he did not waive any of his equitable or legal rights; and the defendants having gone on with the work after the commencement of the action, they did so at the risk of being compelled to remove their works from the plaintiff's land, if, in the end, it was found they had no right to occupy it with their works.    Such notice having been given in a timely manner, the plaintiff was entitled to his mandatory injunction at the end of the litigation to compel the removal of so much of the embankment as had been unlawfully placed upon his land pending the litigation.    *State*

*of Pennsylvania v. Bridge Co.*, 13 How., 519, and the other cases cited by the plaintiff in his brief. See, also, High on Injunctions (2d ed.), § 708, and cases cited. As the supervisors encroached upon the plaintiff's land without any authority to do so, and without making any compensation therefor, the judgment should be affirmed.

The plaintiff, on his appeal, insists that he was entitled to further relief than was granted by the court. His claim is, that the defendants had no lawful authority to make the improvement in front of his land; that they were mere trespassers; and that the structure erected by them in the highway in front of his land was a private nuisance as to him, if not a public nuisance against the state; that he is entitled to have the nuisance abated and removed; and that the court should have so decided by its judgment. It is claimed, and the county court has so found, that the county board did the work under the authority conferred on them by ch. 51, Laws of 1878, and not otherwise; and the learned counsel for the plaintiff insists that such act is unconstitutional and void for various reasons set out in his brief. It seems that the making of this improvement in the highway at the place where the work was finally done, had been in contemplation for several years. In 1876 the legislature passed an act authorizing the county to do this work. See chapter 365, Laws of 1876. In 1877 another act was passed on the same subject (chapter 279, Laws of 1877); and in 1878 chapter 51 was passed, and the acts of 1876 and 1877 were repealed. The act of 1876 declared the road in question a county highway, and authorized and directed its improvement by the county board during the year 1876; and its seventh section provided that " if, by improving said highway in the manner aforesaid, any damages be sustained by any person or persons owning lands adjoining such highway, at the place or portion of such highway being so improved according to the terms of the act," then such damages should be ascertained in the manner provided by chapter 19 of the Revised Statues of

1858; and provided that such damages, when so ascertained, should be collected as other town charges, but should not be paid until the improvement was made. The act of 1877 again declared said highway a county highway, and made some further provisions concerning the work; and the sixth section provides that " if, by improving said highway, any damage be sustained by any person owning lands adjoining such highway, at the place or portion of such highway being improved according to the terms of the act, such damages shall be paid out of the treasury of the county." This act also provides for the levy of a county tax sufficient to cover all the expenses incurred under the same.

Section 2 of chapter 51, Laws of 1878, recites that, the county board of supervisors of the county of Milwaukee having declared and made the portion of Spring street road between the present westerly limits of the city of Milwaukee and the westerly boundary line of the Calvary cemetery, in the town of Wauwatosa, a county highway, all acts and proceedings of the county board in that behalf are hereby legalized. Section 1 of the act requires the Chicago, Milwaukee & St. Paul Railway Company to erect an iron bridge over their track where it crosses the highway in question in the town of Wauwatosa, and prescribes the manner of constructing the same. The second section, after reciting and declaring as above stated, requires the county board to cause to be constructed, in 1878, a viaduct approach to said bridge from the eastwardly end thereof, east 400 feet, and also to extend such viaduct still eastwardly 200 feet more, to be made of earth filling, to the present iron bridge over the Menomonee river. This filling is the only part of the work which encroaches on the plaintiff's land. It also provides for a convenient earth approach from the west end of the railroad bridge, westward, and gives a description of how the viaduct and grade shall be constructed, and the grade thereof, and then further provides " that the aforesaid portion of county highway shall thereafter, and so long as the

same shall remain a county highway, be repaired and maintained by said board of supervisors at the proper expense of said county," etc.

Section 3 provides for making plans and letting the work. Section 4 provides that the county board "shall, in 1878, levy a tax sufficient to pay the said county's portion, hereinafter mentioned, of *the costs and damages* of the aforesaid improvement, and shall annually thereafter levy a tax sufficient to cover the expense and cost of repairing and maintaining said portion of county highway. Three-fourths of the expense of said work, and of *any damages* which may be recovered of the said county of Milwaukee by reason of such construction, shall be paid out of the county treasury; and one-quarter of the expense of such construction, and of all damages which may be sustained and recovered under this act by reason of such construction, shall be borne and paid by the property abutting on said Milwaukee and Blue Mound road, or Spring street road, and on either side thereof, from the westerly limits of the city of Milwaukee, for such distance as the county board may determine is benefited by such improvement, and of not less than three miles westerly along said road; and such proportion of the costs and damages shall be distributed upon and assessed upon the various tracts of land so abutting on said road, by the said county board of supervisors, according to the relative benefit, in the judgment of said board, accruing to each such tract or piece or parcel of land by reason of the construction of such improvement." The remainder of the section provides that such assessments may be collected in the same manner as general county taxes. Section 5 gives an appeal to the circuit court of Milwaukee county to any person who shall deem himself aggrieved by such assessment. Section 6 relates to the railway company, and requires it to complete the bridge over its tracks in a reasonable time, and to build the abutments thereof within sixty days after the county board shall let the contract for making the viaduct and other

improvements; and section 7 repeals the laws of 1876 and 1877.

The learned counsel for the plaintiff argues that this act is unconstitutional and void for several reasons. *First*, because it is a local bill and embraces more than one subject, and that subject is not expressed in the title. The title of the bill is, "An act to provide for the improvement of the Blue Mound or Spring street road, county highway in Milwaukee county, and to repeal chapter 365 of the Laws of 1876, and chapter 279, Laws of 1877." It is said that because it, *first*, provides for the erection of a bridge by the Chicago, Milwaukee & St. Paul Railway Company; *second*, legalizes, or attempts to legalize the acts of the board of supervisors, and thereby creates a county highway; *third*, provides for the construction of a viaduct and turnpikes by the county board; *fourth*, provides for the assessment and collection of a special county tax to pay for three-fourths of the cost of the work; *fifth*, provides for a special assessment of benefits upon certain property sufficient to pay one-fourth of the cost of the improvement; *sixth*, provides for taking private property, and for opening and improving a highway, without providing a jury to ascertain the necessity of taking the same or the damages thereto or the value of the land taken; *seventh*, provides for an appeal from the assessment of benefits, and that on such appeal the circuit court shall not award a larger amount of damages than were awarded by the county board of supervisors; and *eighth*, repeals two other statutes,— the act is void because it contains more than one subject.

The title of the act, we think, sufficiently states the subject, as prescribed by section 18, art. IV of the constitution. The subject, and the only subject, of the act is the improvement by the county of Milwaukee of a certain highway situated in said county; and, so far as we are able to comprehend the act, there does not appear to be anything in it which does not strictly relate to that subject. It is said, that, because it re-

quires the railway company to build a bridge over its tracks where they cross the highway to be improved, that is a subject different from the improvement of the highway. We think otherwise. The bridge on the railroad is clearly a part of the improvement of the highway. Unless such bridge be built, the improvement would be imperfect. It is not another subject because a part of the improvement is required to be made by one party or corporation and a part by another; nor is the declaration in the act that the highway improved shall be a county highway, and kept in repair by it, another subject. The very act of requiring the county to make the improvement suggests that when improved it should be under its control. Certainly it cannot be said that because the act requires the improvement to be made partly of earth and partly of wood and iron, it relates to more than one subject. That the act provides for the method of paying for the improvement is clearly not another subject, within the meaning of the constitution; nor is the repeal of the acts mentioned. These acts were passed to forward the same object, the improvement of that highway; and when the new act was passed to improve it in a different manner, it became a necessity to repeal the former acts relating to the same subject. The repeal of these acts is therefore a part of the same subject. We see nothing in the act which renders it void as violating the provisions of section 18, art. IV of the constitution. See *Yellow River Imp. Co. v. Arnold*, 46 Wis., 214–228; *Phillips v. Town of Albany*, 28 Wis., 340; *Mills v. Charleton*, 29 Wis., 400.

It is urged that the act violates section 13 of article I of the constitution, in that it provides for taking private property for public use without just compensation. After reading the act carefully, we see nothing in it which contemplates that the county board should take or would be required to take any private property for the construction of its improvement. The act provides for the improvement of a highway which had been in use as such for over forty years, and there is nothing

in the nature of the improvement authorized to be made which would require the taking of any lands not contained within the limits of said highway. The facts show that the improvement was made wholly within the limits of the highway, except a small portion of the embankment which encroaches on the plaintiff's land, but which might have been all made within the limits of the highway, had the supervisors seen fit to place it there. From the evidence we are inclined to think this embankment was extended upon the plaintiff's land outside of the highway in order to make him a roadway, to ascend from his land to the top of the embankment upon which the improved way passed. There is certainly nothing in the acts which shows any necessity for taking any private property in order to construct the work.

It is also claimed that the act is void because it violates subdivision 2, sec. 31, art. IV of the constitution, which prohibits the legislature from enacting any special or private law "for laying out, opening or altering highways, except in cases of state roads extending into two or more counties, and military roads to aid in the construction of which lands may be granted by congress." Admitting that the act in question is a special act, within the meaning of the provision of the constitution above quoted, we do not think this act violates the provision; because the act does not provide for either laying out, opening or altering a highway, within the meaning of such provision. The act provides for the improvement of a highway already laid out and opened, and which had been so laid out and opened for forty years. The altering of a highway, within the meaning of such constitutional provision, clearly means an alteration of its course, and not a change of its grade.

It is urged that the act violates the sixth subdivision of said section 31, art. IV, in that it provides for the assessment of a tax to pay the cost of the improvement, and for a special assessment upon certain lands, which are supposed to be bene-

fited by the improvement, for the payment of one-fourth of the cost of making the same. Upon this point we have some doubts. If the provision had been the general one found in chapter 279, Laws of 1877, simply directing the board to levy an annual tax sufficient to cover the purposes and objects of the act, we should hesitate to declare even that part of the act void. It would be simply saying what would be the duty of the county board to do had it not been said. If the statute directed the county board to do the work at the expense of the county, it would be the duty of the board to see that a tax was collected upon the property of the county to pay for the work, and no special direction would be necessary; and there-fore a special direction in the statute to levy and collect the tax under the general tax law would not be a violation of the constitutional provision. The tax would be assessed and col-lected under the general laws of the state, and would not be a special or local law for the assessment or collection of taxes. It would be simply adding an item of expenditure to the taxes of the county, to be assessed under the general laws of the state. We are inclined to think the other provision of the act providing for the assessment of one-fourth of the costs and damages upon certain property, to be determined upon by the county board, is a special law for the assessment and col-lection of a tax, prohibited by the provision of the constitu-tion above referred to. Without discussing the subject or finally determining this question, we will take it for granted that so much of the act is void.

But we think that fact does not make the county board, and those acting under them, mere trespassers. The other parts of the act, to which there are no constitutional objections, au-thorized the county board to do the work. Disregarding this void provision, they concluded to act under the law and make the improvement; and they are not to be treated as trespassers because they might be unable to enforce that part of the act to which there may be constitutional objections. When they

undertake to enforce that part of the law, it will be for those who resist its enforcement to test its constitutionality. An unconstitutional provision in a law does not necessarily render the whole act void, nor can its unconstitutionality be taken advantage of by one who is not affected by the act, or that part of it which is unconstitutional. The proper county authorities having gone on with the work, notwithstanding there may be an unconstitutional provision as to the method of collecting a part of the cost, the county would be liable to perform its contracts with those with whom it contracted for the work, and the acts of the county officials would not be so far *ultra vires* that the county could repudiate their acts, and refuse to pay for the work done. The work must therefore be treated as done under legal authority, so far as the county board and its contractors are concerned. See *Daniels v. Tearney*, 102 U. S., 415; *Ferguson v. Landram*, 5 Bush (Ky.), 230; *People v. Murray*, 5 Hill, 468; *Lee v. Tillotson*, 24 Wend., 337; *Van Hook v. Whitlock*, 26 Wend., 43; *B., C. R. & M. R. Co. v. Stewart*, 39 Iowa, 548.

It would be clearly inequitable to permit this plaintiff to prevent the making of a greatly needed and most important public improvement of one of the great thoroughfares of the state, upon the plea that one of the provisions of the act under which the work is proposed to be done is void, when he is not affected by such void provision. As to what persons may take advantage of an unconstitutional act, or an unconstitutional provision in an act which is in other respects constitutional, is very fully and ably discussed by Chief Justice SHAW in *Wellington and others, Petitioners, etc.*, 16 Pick., 87; and it is there held that an unconstitutional act, or provision in an act, is to be deemed void only against those persons whose rights are affected by the unconstitutional provision, and that a stranger cannot contest it. Cooley on Const. Limitations lays down the same rule (page 163). In the case of *Bridge and Turnpike Corporation v. County of*

*Norfolk*, 6 Allen, 353, which was an action to compel certain counties to pay the corporation its damages for a certain turnpike which had been taken by the public, it was held that the counties could not object to the constitutionality of the act on grounds which affected merely abutters or towns. *Sinclair v. Jackson*, 8 Cowen, 543; *Heyward v. Mayor, etc.*, 8 Barb., 486–489; *Williamson v. Carlton*, 51 Me., 449–453; *Dejarnett v. Haynes*, 23 Miss., 600; *State v. Rich*, 20 Mo., 393. If the county had proceeded to make an assessment, under the act of 1878, for the one-fourth of the cost of the road, and had not assessed any part thereof against the lands of the plaintiff, it is very clear he could not have taken any proceedings to avoid the assessment made against his neighbor's lands, nor have prevented them from paying their assessment, had they seen fit to do so. We are clear that he ought not to be allowed to set up the void provision of the act as a ground for enjoining the work by the county. It was a provision in which the county, and those whose lands might be assessed, were interested, and this plaintiff could have no interest in it until an attempt was made to assess some part of the cost of the improvement on his land. If the provision be void, the county may be deemed to have waived its enforcement as a part of the act authorizing the improvement, and to have proceeded to make the same without any intent to enforce its unconstitutional provisions. We hold that the county, in making the improvement, was proceeding lawfully under the act of 1878.

But, independent of the special act of 1878, we see no reason why the county might not have made the improvement under the general laws in force at that time. It has been the policy of this state for many years to cast the burden, in part at least, upon the county, of making improvements upon its public highways, whenever the improvement is very expensive and the charges would be unduly onerous upon the town in which the highway is situated. See the statute upon the construction of bridges, section 115, ch. 19, R. S. 1858, as amended

by section 1, ch. 13, Laws of 1866 (Taylor's Statutes, 511, 512, § 151). For a long time the power of the county to aid in the construction of highways was limited to bridges; but by chapter 152, Laws of 1872, the legislature empowered the counties to raise money by taxation, not exceeding $15,000 in any one year, to improve such of the principal highways of the county as the board should designate as county highways. Chapter 282, Laws of 1876, authorized the county board to expend money on such highways without making them the highways of the county, or making the county responsible for damages resulting in consequence of the same being out of repair. Chapter 252, Laws of 1877, limited the annual expenditure to the sum of $8,000. The provisions of these laws were reënacted and continued in R. S. 1878, sec. 1308. Although, by the amendment of chapter 252, Laws of 1877, no county could raise more than $8,000 annually for the improvement of highways in such county, there was nothing in the law which would have prevented the county of Milwaukee from making this improvement under these general laws, though the cost exceeded the sum of $8,000. The improvement could have been made in 1878, but under the general law it could not have been paid for in full that year. We see nothing, however, which would have hindered the county from levying an additional tax in 1879 sufficient to pay the balance of the cost of the improvement over the $8,000 authorized to be raised in 1878.

The only other question is, whether the plaintiff is entitled to restrain the county officers from doing the work because the making of such improvement in the highway opposite his lands was a taking of his private property without making just compensation. We think the authorities settle the question, for this state at least, that, in the absence of any law giving the owners of real estate adjoining a public street or highway a right to recover damages of the city, village, town or county in which the same is situate, on account of a change

of the grade of such street or highway, no damages can be recovered on account of such change, unless the premises of the adjoining owner have been injured through the negligence or carelessness of the municipality or its agents in making such change, and that such change of grade is not in any case the taking of private property for public use. Although in the early case of *Goodall v. Milwaukee*, 5 Wis., 32, Justice SMITH made a very learned and able argument in favor of holding that a municipality ought to be liable to pay damages on account of the change of grade in a public street in a city, which caused damage to the adjoining lot-owner, the case was not disposed of by the court upon the grounds taken by the learned justice, but upon the ground that the ordinances of the city of Milwaukee had pledged the faith of the city to those who had erected buildings fronting on the streets so graded, that, if the grade of the street should be thereafter changed, the city should make good to the owner any damages he might suffer by such change.

This question was thoroughly discussed in the court of appeals in New York in the case of *Radcliff's Executors v. Mayor of Brooklyn*, 4 N. Y., 195. It was held in that case, that, " when a municipal corporation, under a rightful authority contained in its charter, grades and levels a street, an action on the case will not lie by an adjoining owner, whose lands are not actually taken, for consequential damages to his premises, there being no want of care or skill in the execution of the work, and no provision in the charter for the payment of damages of that kind." This decision has been followed by the courts of that state, and adopted by many of the other states. See *Hill v. Boston*, 122 Mass., 344; *French v. Boston*, 23 Alb. L. J., No. 14, p. 278. In *Alexander v. Milwaukee*, 16 Wis., 247, this court adopted the rule laid down in the case cited, and held generally that " a municipal corporation, making an improvement solely for the benefit of the public, under ample authority granted by the legislature, and performing

the work in a circumspect and careful manner, is not answerable for consequential damages produced thereby to property in the vicinity of such improvement, no part of which is taken or used therefor." It was also held in this case, "that the making a public improvement in the vicinity of property which is incidentally injured thereby, or diminished in volume, but no part of which is taken or used for such improvement, is not a taking of private property for public use, within the meaning of the constitution."

Although the late Justice Paine had in some former decisions approved of the argument of the learned Justice Smith in the case of *Goodall v. Milwaukee,* he says in this case, agreeing with the opinion written by the present chief justice: "I concur in the decision of the court, that, by the weight of authority, a municipal corporation or public agent, acting in pursuance of law, and with due care and skill, is not responsible for consequential injuries to property which has not been actually taken for public use, occasioned by the construction of a public improvement;" and he says he makes this statement in this case for the reason that in the case of *Weeks v. The City of Milwaukee,* 10 Wis., 242, he approved "the reasoning of Justice Smith in *Goodall v. The City of Milwaukee,* 5 Wis., 39, which would sustain the opposite doctrine." This case has never been overruled, and, although it has been criticised, its soundness has not been questioned by this court, and its doctrine is sustained, as was said by the late learned Justice Paine, by the undoubted weight of authority. We think public policy demands that its principles should be firmly adhered to. Any other doctrine would greatly embarrass the public authorities in making those necessary changes which must be made in public places, streets and highways, required for the convenience and necessities of the rapidly increasing business of the country. This court having fairly disposed of this question after ample discussion, it is unnecessary to pursue the argument further. If the statute authorizing this

improvement has provided that the adjoining owners may re-
cover damages for any injuries they may sustain by reason of
the construction of this work (a point we do not decide), such
right to recover damages would not furnish any ground in
equity for enjoining the work until such damages were paid.
That right could only be enforced in an action at law by the
party injured, in the absence of any special provision for the
recovery of such damages. Such right of action is not given
as a method of recovering a just compensation for property
taken for public use under the provisions of the constitution,
but is purely a statutory right, and can be enforced only by an
action at law.

*By the Court.*— The judgment of the county court is
affirmed on both appeals.