BUCHNER VS. THE CHICAGO, MILWAUKEE & NORTHWESTERN RAILWAY COMPANY.

*March 20 — April 8, 1884.*

RES ADJUDICATA. *(1, 2) Dicta, judicial and obiter.*
RAILROADS: EMINENT DOMAIN. *(3) Liability for change of grade of highway. (4) When owner may proceed for condemnation.*

1. An expression of opinion upon a point involved in a case, argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the case, if a *dictum*, should be considered a *judicial dictum* as distinguished from a mere *obiter dictum*, i. e., an expression originating alone with the judge writing the opinion, as an argument or illustration.

2. Thus where in an equitable action it was contended (1) that the plaintiff is entitled to no relief, and (2) that if he has any remedy it is not in equity, and this court sustains the latter contention, holding that there is an adequate remedy at law, that part of the opinion which states that the plaintiff has a remedy at law and indicates what that remedy is, is not *merely obiter*.

3. The doctrine of *Buchner v. C., M. & N. W. R'y Co.*, 56 Wis., 403, that the lowering by a railway company of the grade of a highway, in order to adjust such grade to that of its track laid across such highway, is a taking of the property of the owner of a lot abutting on that part of the highway so lowered, for which and for the consequent injury to such lot the railway company must make compensation, although the track itself does not encroach upon that part of the highway of which the fee is in such lot-owner,— is reaffirmed.

4. If, in such case, the railway company neglects to have such compensation ascertained, the lot-owner may institute proceedings in that behalf, under sec. 1852, R. S.

APPEAL from the Circuit Court for *Waukesha* County. The case is thus stated by Mr. Justice CASSODAY:

"During the times in question the plaintiff owned and occupied as a homestead a lot of about an acre and a half of land in the town of Waukesha, fronting northeasterly upon and extending to the center of the South Milwaukee road, or Broadway,— such front being about 250 feet in extent, and the line of such front running in a northwesterly and southeasterly direction. The southeasterly side of said lot was upon the Prospect Hill road. In 1881 the defendant constructed its railroad track in nearly an east and west direction across said Broadway, at a point so near the northwesterly line of the plaintiff's said lot, at the place of crossing, that the center of the railroad track was eleven feet and the end of the ties seven feet northwesterly from the northwest corner of the plaintiff's said lot in the center of said Broadway. In crossing said Broadway with said railroad track the defendant dug down and placed its track six feet below what was the former surface of said Broadway, and to restore said Broadway to its former usefulness it graded down the whole surface of that portion of said Broadway upon which the plaintiff's said lot so fronted, including the half to which the plaintiff had the legal title, from the surface at Prospect Hill road-crossing to a depth of five feet and eight inches below the former surface of the street at the plaintiff's northwest corner in the center of said street. When such work and grading were nearly completed, the plaintiff filed a bill in equity to enforce the defendant to proceed and condemn that portion of his land constituting one half of said highway, upon which the defendant had so entered, cut down, and removed the dirt and graded down the same, and also to ascertain and recover the damages thereby sustained, and for an injunction until such damages were ascertained and paid. The court found, among other things, as a matter of fact, that

the premises of the plaintiff had, by reason of such change of grade, been injured and depreciated in their market value to the extent of $1,500; and, as a conclusion of law, that although the plaintiff would be entitled to recover such damages in a proper action, yet that he could not maintain that action; and hence dismissed the complaint with costs. The judgment entered thereon was affirmed by this court. See 56 Wis., 403, where the facts of that case are fully reported.

"Afterwards the plaintiff filed this petition for condemnation, alleging substantially the same facts as in the bill of complaint; and thereupon the time of the hearing was fixed, and due notice thereof was given to the defendant, which filed an answer to the petition, substantially admitting the facts stated, and alleging that it had not built or constructed any of its line of road upon any portion of the plaintiff's land, and that the grading of the street on the front of the plaintiff's lot was in pursuance of the order and directions of the supervisors of the town. After a hearing the judge of the court, at chambers, by order appointed three commissioners therein, with the usual directions. The defendant excepted to the order and ruling of the court thereon. August 28, 1883, the defendant, in pursuance of notice, moved the court to vacate and set aside the order so made, but the motion was denied by the court; and from the order denying the same the defendant appealed."

For the appellant there was a brief by *Jenkins, Winkler & Smith,* and oral argument by *Mr. Jenkins.* They contended, *inter alia,* that the decision in the former case (56 Wis., 403) was merely that that action would not lie, whatever might be the rights of the plaintiff, and, that being decided in favor of the defendant, it was not pertinent to the issue to pass upon any other question involved, and neither party is concluded in any other respect by anything said in that opinion. *Hardy v. Mills,* 35 Wis., 149; *Woodgate v. Fleet,* 44 N. Y., 1–13; *Lathrop v. Knapp,* 37 Wis., 307; *John-*

JANUARY TERM, 1884.    267

Buchner vs. The Chicago, Milwaukee & Northwestern R'y Co.

*son v. N. W. N. Ins. Co.,* 39 id., 96. The cutting down of the highway was not a taking of property within the meaning of the constitution. It was the simple performance of an act required by law to be done; it was done under authority of the supervisors of the town, who were authorized to change the grade in their discretion, and for such change if made by the town no action would lie by the plaintiff; it was done for the benefit of the public and not for the benefit of the company; by no proceedings could the company acquire any right in that highway; and until the legislature shall otherwise provide, an act so done for a public purpose under sanction of legislative authority, though causing incidental injury to property, is not the basis of an action. The case is not within sec. 1852, R. S., and the plaintiff could not take the initiative in condemnation proceedings. *Sherman v. M., L. S. & W. R'y Co.,* 40 Wis., 652; *Blesch v. C. & N. W. R'y Co.,* 43 id., 192; *Bohlman v. G. B. & L. P. R'y Co.,* 30 id., 108; *Curl v. S. & F. du L. R. R. Co.,* 46 id., 625.

For the respondent there was a brief signed by *Finches, Lynde & Miller,* attorneys, and *B. K. Miller, Jr.,* of counsel, and the cause was argued orally by *B. K. Miller, Jr.*

CASSODAY, J. The facts in this case are substantially the same as in *Buchner v. C., M. & N. W. R'y Co.,* 56 Wis., 403. We are informed by the learned counsel for the appellant that "this appeal is taken upon the assumption that most that was delivered in that opinion was merely *obiter,* unnecessary to the decision of that case, and not binding upon the parties, and much of it upon points not argued, and that Mr. Justice LYON was [there] led into the expression of opinions which cannot be sustained upon reason or authority." The correctness of this assumption, of course, depends upon the record of that case, which speaks for itself.

It would seem that judges, as well as lawyers, sometimes differ as to what may properly be regarded as *obiter dictum.*

It is not unfrequent, in courts of last resort composed of several judges, for all to come to the same conclusion, but from different views of the law, and hence it may at times be difficult to determine the precise principle upon which the case was decided, or what may properly be deemed mere *obiter.* "According to the more rigid rule," says Bouvier, "an expression of opinion, however deliberate, upon a question, however fully argued, if not essential to the disposition that was made of the case, may be regarded as a *dictum.*" This seems to be the view of the learned counsel for the appellant. Under this "more rigid rule," it is believed that, comparatively, there are but few opinions in the books which contain no *obiter dictum;* that is, nothing which was not absolutely essential to the disposition made of the case. Under that rule what is here being written is nothing but *obiter dictum.* But Bouvier adds that "it is, on the other hand, said that it is difficult to see why, in a philosophical point of view, the opinion of the court is not as persuasive on all the points which were so involved in the cause that it was the duty of counsel to argue them, and which were deliberately passed over by the court, as if the decision had hung upon but one point." Such *dictum,* if *dictum* it is, should, it would seem, be regarded as " judicial *dictum,*" in contradistinction to mere *obiter dictum,*— that is, an expression originating with the judge alone, while passing, by the way, in writing his opinion, as an argument or illustration drawn from some collateral question. But even in that sense, we apprehend, there have been but few judges, occupying the bench for any considerable length of time, who have always been so precise and concise in their opinions as not to be subject to that criticism. As illustrations, we call to mind such expression of *obiter* by no less distinguished judges than Sir MATTHEW HALE, Lord Chief Justice KENYON, and Lord Chief Justice DENMAN, as will appear by reference to the following cases: *Steel v. Houghton,* 1 H. Bl., 53; *Par-*

*ton v. Williams*, 3 Barn. & Ald., 341; *Bast v. Byrne*, 51 Wis., 536. Besides, mere *obiter* is not always reprehensible. On the contrary, some of the most sacred canons of the common law had their origin in the mere *dicta* of some wise judges. To be valuable, however, they must of course be right.

But the opinion of the court in the former case cannot, we think, be regarded as merely the individual expressions of opinion of Mr. Justice Lyon upon collateral questions, while passing along in writing the opinion. Of course, an opinion of an appellate court, to be of any practical value to the trial court, must deal with the facts presented and the questions involved and discussed at the bar, even though some of them may only be indirectly involved in the determination of the main question upon which the case finally turns. On the trial of the equity suit brought by the plaintiff against this defendant to enforce the condemnation in question, and for an injunction until the damages should be ascertained and paid, the trial court found, in effect, that by cutting down the street in front of the plaintiff's dwelling-house the defendant had injured and depreciated the market value of his premises to the extent of $1,500, and, as a conclusion of law, that although the plaintiff *would be entitled to recover such damages in a proper action*, yet he could not maintain his bill in equity therefor; and hence dismissed the same with costs. The plaintiff appealed to this court, and of course the correctness of that adjudication was directly involved. The issues there presented, the findings of fact and conclusions of law, the points raised and discussed by counsel on both sides, are all fairly presented in the report of the case. Among the questions thus discussed by counsel *pro* and *con* were, in effect, these: Whether the plaintiff was the owner in fee of one half of the road-bed thus excavated and graded down; whether he had the right to protect the same for ordinary street purposes; whether he could be deprived of ingress and egress to and from the street to his

dwelling-house without compensation; whether the construction and maintenance of the railroad at the point in question imposed a new burden or servitude upon the portion of the street belonging to the plaintiff; whether such excavation and removal of the earth was a taking of the plaintiff's property within the meaning of sec. 13, art. I, of the constitution; whether the interest of the plaintiff in the highway was such as to require the defendant to condemn the same and pay for it prior to such taking; whether such condemnation could be enforced in equity by injunction.

Counsel for the defendant then sought to sustain that judgment upon two grounds, which were to the effect: (1) That the damages complained of were incidental merely, and not such as would entitle the plaintiff to recover in *any action;* (2) that assuming that he could recover in a proper action, yet that his bill in equity was properly dismissed. This court determined the first proposition against the defendant, and the second in its favor. The complaint now is, in effect, that it was mere *obiter* to determine the first proposition, by reason of the conclusion reached upon the second proposition. Upon the same theory it would have been mere *obiter* to say anything upon the second proposition, had we determined the first proposition the other way. To confine this court to the consideration of a single proposition, where several are involved and fully discussed by counsel, might at times operate to prolong litigation, increase the number of appeals, and inflict unnecessary burdens upon both parties and the public, and yet at times it may be highly proper. It will be observed that the judgment was affirmed upon the same theory upon which it was decided by the trial court, to wit, that although the plaintiff was entitled to recover in a proper action, yet by going into a court of equity he had misconceived his remedy. Counsel complain because the opinion is not confined to simply holding that the plaintiff could not maintain that action. But the ground of that

decision was that the plaintiff had a perfect remedy at law. We agree with counsel that "-it is not well, ordinarily, for courts to suggest remedies;" but, when counsel insist that a bill in equity must be dismissed because the plaintiff has a complete remedy at law, theyʼare not in a very good position to complain, because, in deciding in their favor on the proposition suggested, the court referred to such remedy in unmistakable terms, instead of keeping it a profound secret, or referring to it in such vague and general terms as to mislead the other party. We do not hold that the finding of the court in the other case as to the amount of damages is *res adjudicata* in this case; nor that all that was said in that case is absolutely binding upon the parties and the court in this case; but simply that that opinion cannot fairly be treated as "merely *obiter*." So much in deference to the earnest argument of the able counsel for the defendant on the subject of *obiter*.

· We are now to consider whether counsel was correct in claiming "that Mr. Justice Lyon was led into the expression of opinions which cannot be sustained upon reason or authority." It is conceded by all parties that the plaintiff's land extended to the center of Broadway, subject to the public easement over the same as such highway. It must be conceded, for the purposes of this case, that the street in front of the plaintiff's premises had, long prior to the time in question, been taken for the purposes of a public highway. We moreover assume that adequate compensation for such taking for the use of a public highway, if required, was made at the time of such taking. This being so, it is undoubtedly true that the supervisors of the town, under their authority as such, had the right, for the purpose of improving the street, to enter upon the highway in question, and with ordinary care and skill to excavate, cut down, and lower the grade of the same, and for such change of grade by them for such a purpose the plaintiff would have been

without remedy. This was settled in *Harrison v. Super-visors*, 51 Wis., 663, and cases there cited. But even the supervisors, for the purpose of improving the highway, have no right to extend an embankment or deposit earth outside of the limits of such highway without subjecting the town to additional liability. *Ibid.* Nor does it necessarily follow that even the supervisors of the town could make such excavation and change of grade as was made in the present case for the purpose of constructing a railroad. It is well settled in this state that the appropriation of a public highway for the purposes of a railroad is the imposition of an additional burden upon the abutting owners, and hence is the taking of private property for public use within the meaning of sec. 13, art. I, Const. *Ford v. C. & N. W. R. R. Co.*, 14 Wis., 609; *Pomeroy v. M. & C. R. R. Co.*, 16 Wis., 640; *Hegar v. C. & N. W. R'y Co.*, 26 Wis., 624; *Sherman v. M., L. S. & W. R. R. Co.*, 40 Wis., 645; *Blesch v. C. & N. W. R'y Co.*, 43 Wis., 183. This being so, neither the legislature nor any municipality could authorize such taking without, at least, making provision for compensation therefor. *Ibid.* It follows that the defendant company would not have had the right to make the excavation and grading in question for the purposes of a railroad track and road-bed for the same without the consent of the abutting owners, and without condemnation and compensation therefor in the manner provided by the statute.

Had the company so constructed its road-bed and track in and upon said street, its liability for damages would not have been confined to the land occupied by the track, nor by the road-bed, nor even the track, road-bed, and necessary ditches, but would have covered all land rendered useless or destroyed for the ordinary purposes of a highway, or otherwise. *Hegar v. C. & N. W. R'y Co., supra.* But while the defendant did make the excavation and cut down and grade the street, yet it did not lay its track upon any portion of

the plaintiff's land, nor any portion of the street in front of his premises, and had no purpose of doing so. Does the mere absence of the track, or any purpose of putting it there, deprive the plaintiff of any remedy for the excavation of his land and the removal of his soil? The authorities cited establish, beyond all controversy, that the plaintiff owned the soil to the center of the street. It was his private property, subject only to the public easement. No one had any right to interfere with it, except for the purposes of travel, and the town or district authorities, for the purposes of improving it as a public highway. Any other interference was a trespass. Being private property, except for those purposes, neither the legislature nor the municipality could, without new and additional compensation, impose any new burden or servitude upon it, or authorize the excavation and removal of any portion of the plaintiff's land.

But it is claimed that the railroad company did not excavate and remove the plaintiff's soil and grade down the street in question for the purposes of the railroad, but only to restore the street, after the construction of its railroad across the same, to such condition that its usefulness should not be materially impaired, and that those things were done under the direction of the supervisors of the town. A railway company gets its life and authority from the statute, and only for the purposes named in the statute. Such a company has no vicarious power to act for and in behalf of the supervisors in changing the grade of a street, under the highway laws of the state. Whatever right it may have in that regard is imposed upon it as a condition of constructing its railroad. Its right to take private property for its use is only by virtue of its chartered rights, and then only for the purposes therein designated. Such taking must, therefore, necessarily be by the authority, in the manner, and for the purposes prescribed in the statute, and then it can only be authorized upon the condition of compensation

or consent. A railway company cannot be a traveler upon a highway, nor a supervisor of a town, nor can it have imputed to it the rights or privileges of either. Its agents and employees may, but the company, as such, cannot. These things being so, as between the railway company and the abutting owners of a highway the lands within the limits of the highway are private property. The taking of it by a railway company must, necessarily, be the taking of it for the use of the company. It has no right to take for any other use. Other uses, or uses by other parties, may grow out of or be incidental to such taking, but the taking, nevertheless, is by the railway company and for the railway company. The lands within the limits of such highway being, as between the abutting owners and the railway company, private property, such company can have no additional rights by reason of the easement in favor of the public, nor by reason of the authority to change the grade existing in the town.

The defendant railway was expressly empowered, subject to the provisions of sec. 1836, R. S., " to construct its railroad across, along, or upon any highway; . . . to carry any highway . . . *over or under its track*, as " might " be most expedient for the public good; to change the course and direction of any highway, when made necessary or desirable to secure more easy ascent or descent by reason of any embankment or cut made in the construction of the railroad, *and take land necessary therefor:* provided, such highway or road be not so changed from its original course more than six rods, nor its distance thereby lengthened more than five rods." Subd. 5, sec. 1828, R. S. The conditions contained in sec. 1836, R. S., subject to which the above authority is given, provide, in effect, that such railway " *shall restore* every . . . highway . . . across, along, or upon which such railroad may be constructed, to its former state, or to such condition as that its usefulness shall not be

materially impaired, *and thereafter maintain the same in such condition* against any effects in any manner produced by such railroad." Thus it appears that whenever the railway company constructs its railroad across, along, or upon a highway, it must not only restore the same to as good a condition of usefulness as it was in before, but must thereafter maintain the same in such restored condition. As it is impossible to restore without entering upon the land and doing the things necessary to restore, so it is impossible to maintain the same in such restored condition without preserving and continuing such condition of things, and from time to time re-entering and replacing or removing materials. Such continuing duty is coupled with a supposed permanent right, and necessarily imposes a new burden or servitude upon the abutting owner's private interest and property in the land constituting the highway. Besides, there is a possibility that the defendant may still further lower or elevate its track, which would necessitate further changes in order to restore the highway to a condition of usefulness.

But the right given to a railway company to construct its railroad across, along, or upon any highway, and to carry any highway over or under its track, as provided in sec. 1828, by restoring such highway, and then maintaining it in such restored condition, is given only subject to the further provisions of sec. 1836, that "when any lands shall be required in order to change any highway" in any of the methods named, then "the same may be condemned, taken, and compensation made" therefor "in the manner provided in" that chapter. True, in *Harrison v. Supervisors*, 51 Wis., 645, it is said that "the altering of a highway, within the meaning of such constitutional provision, clearly means an alteration of its course, and not a change of its grade." Page 658. That was the necessary result of holding that so long as the highway authorities kept within its limits, there was no taking within the constitutional provision. But here

the statute is speaking of constructing a "railroad across, along, or upon a highway." Such construction is clearly a taking, within the meaning of the constitution, in each of the cases named. No one would, we apprehend, claim that the clause of the statute requiring condemnation and compensation does not apply when the railroad is constructed "along or upon a highway," nor to so much of the street occupied by the railroad in crossing a highway. So it seems to us that it applies to that portion of the highway which the railway company, as a condition of constructing its railroad across, along, or upon a highway, is required to restore to its former condition of usefulness, and thereafter to maintain in that condition. This "change" of the highway necessitated by the construction of the railroad must, therefore, be a taking, within the meaning of the constitution, and since it must thereafter be permanently maintained by the railway company, there must necessarily be condemnation and compensation.

Applying the statute to the facts of this particular case, it is the same as though the legislature had said in direct terms to the railway company: "You may cross Broadway at the point designated, and cut down and excavate the same, so that your track may be six or any other number of feet below the present surface of the street at that point, but you can do so only on condition that you cut down, excavate, and grade the whole of Broadway on a smooth inclined plane from the surface of Prospect Hill road to the level of such railroad track when constructed." So construing the statute, and it in effect declared that at the point designated the railway company should so construct its road-bed that the sides should have no greater incline or slope than existed in Broadway after it was so restored. Certainly the road-bed is not to be confined to the very land beneath the ties and rails, but to all that is essential in the construction and maintenance of the road-bed. *Hegar v. C. & N.*

*W. R'y Co.*, 26 Wis., 624. Had the necessities of the case required the company to fill in and construct an embankment over the whole surface of Broadway, from Prospect Hill road to the railroad track, in order to construct the railroad, there would seem to be no doubt but what it would have constituted a part of the road-bed. The remote parts of such embankment would have been just as essentially a part of the road-bed as the portion directly under the rails or ties. Such remote parts would have been a taking within the meaning of the constitution. *Harrison v. Supervisors*, 51 Wis., 645. To our minds, it was no less so because it was necessary to excavate instead of embank.

Leaving out of view the fact that the public had a right of easement over Broadway for the purposes of travel, and the further fact that the supervisors had the right to change the grade of the same to promote such purpose, and no one could, we apprehend, successfully maintain that such cutting down, excavation, and removal of the soil could be justified without condemnation of the land and compensation to the owners. And yet, as between such abutting owners and the railway company, in the matter of such cutting down, excavation, and removal of the soil, the existence of the highway in no respect figures, because, as against the railway company, it was private property.

The liability of the company is not limited to its absolute physical necessities, but is measured by its imperative *legal* necessities. If we are correct in the views taken, then what was done in changing the grade of Broadway was a necessary condition imposed by the statute on the company in constructing its railroad across the highway at so great a distance below the surface as it did, and hence was an essential part of the road-bed at that point. This being so, and the corporation having omitted to prosecute the same, and not having acquired title to the lands upon which that part of the road-bed had been constructed, it would seem to follow

that the case is one where the party interested in the lands may institute and conduct the proceedings to a conclusion, within the meaning of sec. 1852, R. S. This view of the facts and the statute seems to distinguish the cases cited by counsel as being in conflict with the opinion written by Mr. Justice LYON in the former case.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for further proceedings according to law.