PABST BREWING COMPANY, Respondent, vs. CITY OF MIL-
WAUKEE, Appellant.

*March 21—May 1, 1914.*

*Municipal corporations: Streets: Change of grade: Railroads: Elevat-
ing tracks: Cutting down street: Taking of property: Compensa-
tion: Power of eminent domain a continuing one: Trespass:
Waiver.*

1. The city of Milwaukee has ample power, under its charter, to
   change the grade of a street for ordinary street purposes by tak-
   ing proper proceedings therefor, but not to enable a railway
   company to maintain its tracks in or across the street; nor can
   it make the railway company its agent for that purpose.
2. The facts that the city in the exercise of its police power required
   a railway company to elevate its tracks, and that it prepared
   plans for and supervised the work of the railway company in
   cutting down a street in front of plaintiff's property so as to
   pass under the tracks, did not render it a joint trespasser with
   the railway company.
3. In such case the city possessed authority of a police character to
   supervise the railway company's operations, but the power to
   lower the street for such purpose was vested in the railway
   company alone by virtue of sub. 5, sec. 1828, Stats., subject to
   the obligation to restore the usable condition of the street and
   to make compensation for the land taken and the injury done.
4. The fact that the city, without authority, commenced some pro-
   ceedings purporting to be for the purpose of changing the grade
   of the street, obviously for the benefit of the railway company,
   did not affect the question of the city's liability.
5. The lowering of the street some distance back from the railway
   right of way and in front of a lot which did not abut on such
   right of way, was a taking for railroad purposes, affording the
   lotowner the right to due compensation under the eminent do-
   main statute.
6. The competency of a railway company, under sec. 1828, Stats., to
   acquire land by the power of eminent domain is a continuing
   one, to be exercised from time to time to suit the exigencies of
   situations as they arise and have to be dealt with, and is not
   confined to the original construction.
7. A property owner who knows of the cutting down of a street in
   front of his property for railway purposes and makes no objec-
   tion until the work is completed, thereby waives the trespass
   and elects to rely upon the statutory remedy by appraisal of
   damages.

8. Assuming the city to have been a participant with the railway company in the appropriation of the land, the waiver of the trespass necessarily extends to all concerned, leaving the owner no cause of action against the city of any kind and none against the railway company except under sec. 1852, Stats.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

Action to recover damages to plaintiff's property claimed to have been caused by an illegal change of grade of a street in the defendant city upon which, at the point in question, the plaintiff's lot abuts.

The complaint was to the effect that defendant trespassed upon its premises by participating with the Chicago, Milwaukee & St. Paul Railway Company in cutting down that part of Kinnickinnic avenue upon which its land abuts to correspond to an alleged re-established grade of such street, the street having been prior thereto duly shaped to an established grade which had not been legally changed. The claim of the defendant was that the acts complained of were committed wholly by the railway company to enable it to comply with an ordinance of the defendant as to elevating the railway tracks so that ordinary travel upon the street could pass under such track and that plaintiff failed to protest against such acts for such length of time as to preclude it from using any remedy to recover compensation for injury to its lands by reason of such acts other than the statutory remedy under sec. 1852, Stats.

These facts were established: A long time prior to the occurrence complained of the street in question was duly worked to an established grade, as claimed by plaintiff. The regrading of the street involved a very material physical change thereof. No efficient proceedings were taken by the defendant to change the legal grade of the street. Plaintiff knew of the intention to lower the street in front of its land a considerable length of time before it occurred, knew of the purpose thereof, knew of the operations to that end as they progressed,

and did not make any complaint until some time after the city ceased actively to make a legal change of grade.

At the close of the evidence defendant's counsel moved for a dismissal upon the ground that it appeared from the evidence, as matter of law, that plaintiff's sole remedy for the taking of its property was against the railway company under the eminent domain statute.

The motion was denied. The court then submitted the question of damages to the jury, resulting in a verdict assessing such damages at $1,000. Judgment was rendered for plaintiff accordingly.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* first assistant city attorney, and oral argument by *Mr. Williams.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *I. A. Fish,* of counsel, and oral argument by *Mr. Fish.*

MARSHALL, J. The question here is this: Should not respondent have made its claim solely against the railway company? The street was not cut down for street purposes but for railway purposes. Had it not become necessary for the railway company to raise its tracks, no change in the physical characteristics of the street would have occurred. The city had ample power to change the grade for ordinary street purposes by taking proper proceedings to that end; but not to enable the railway company to maintain its tracks in or across the street, nor make the railway company its agent therefor. That seems so on principle and in spirit, at least, this court so concluded in *Buchner v. C., M. & N. W. R. Co.* 60 Wis. 264, 19 N. W. 56.

The city charter of *Milwaukee,* as to grading and changing grades, has reference to shaping streets for street purposes but not to aiding in the construction or maintenance of a railway. The only power a railway company has for interfer-

ence with a public street or highway, is referable to sec. 1828, sub. 5, of the Statutes, which confers upon such company, subject to the provision of sec. 1836, authority "to construct its railroad across, over, under, along or upon any . . . highway, . . . to carry any highway . . . over or under its track, as may be most expedient for the public good; to change the course and direction of any highway . . . when made necessary or desirable to secure more easy ascent or descent by reason of any embankment or cut made in the construction of the railroad and take land necessary therefor," etc.

The subject condition is: "Shall restore . . . every highway . . . across, along or upon which such railroad may be constructed to its former state or to such condition as that its usefulness shall not be materially impaired . . ."

The company, here, did not obtain any authority from the city, except within the field of police power. Therefore, the mere fact that city officials furnished plans for the work and looked after it as regards city regulations did not change the nature of the work. It was a railroad matter from start to finish, referable, not to any power which the city possessed to lower the street, but wholly that conferred upon the railway company by statute. *Buchner v. C., M. & N. W. R. Co.* 56 Wis. 403, 14 N. W. 273; *Shealy v. C., M. & N. R. Co.* 72 Wis. 471, 40 N. W. 145; *Shealy v. C., M. & N. R. Co.* 77 Wis. 653, 656, 46 N. W. 887.

The foregoing seems to answer the claim that the appellant was a joint trespasser with the railway company. To restate the matter, in brief, appellant did not confer any authority on the railway company to cut down the street for railway purposes. It did not possess power to do so. The street was cut down for such purpose. The statute conferred authority so to do subject to the obligation of the railway company to restore the usable condition of the street and to compensate for the land taken and injury done. The city

possessed authority of a police character to supervise the railway company's operations. That, without authority, it commenced some proceedings purporting to be for the purpose of changing the grade of the street, obviously, for the benefit of the railway company, does not cut any figure in the case.

Whether the interference with the street for some distance back from the old right of way and in front of plaintiff's lot, which did not abut on such way, was a taking for railway purposes, affording the owner the right to due compensation under the eminent domain statute, is ruled in the affirmative by the cases cited. They are precisely like this case, except that the disturbances there were in the original construction, while here it was for the purpose of a change which the city required under its police power to be made.

In the last case cited the court said: "The lowering by a railroad company of the grade of the highway, in order to adjust such grade to that of its track laid across the highway," is "a taking of the property of the owner of the lots abutting on the highway, for which, and for the consequent injury to said lots, the company must make compensation, though the track itself" does "not encroach upon that part of the highway of which the fee" is "in the owner. In case the railroad company, in order to perform its legal duty to restore the highway it occupies with its track, is compelled to take and carry away the soil of an adjoining lot, . . . compensation must be made to the owner of the property thus taken and injured. . . . The company has no right to make the excavation and grading in the highway for the purposes of a railroad track without making compensation." In the previous case cited, it was distinctly held that authority is given by statute to a railway company to cut down the street on either side of its ordinary right of way for the purpose of a crossing and that the land so taken is a part of its right of way in the broad sense and within its eminent domain rights.

In the second appeal in the *Buchner Case* (60 Wis. 264,

19 N. W. 56), the point was particularly considered as to whether, in the circumstances of this case, there is a taking and the court said: The construction of a railroad "across, along or upon a highway" "is clearly a taking, within the meaning of the constitution, in each of the cases named. No one would, we apprehend, claim that the clause of the statute requiring condemnation and compensation does not apply when the railroad is constructed 'along or upon a highway,' nor to so much of the street occupied by the railroad in crossing a highway. So it seems to us that it applies to that portion of the highway which the railway company, as a condition of constructing its railroad across, along or upon a highway, is required to restore to its former condition of usefulness. This 'change' of the highway necessitated by the construction of the railroad must, therefore, be a taking, within the meaning of the constitution, and since it must thereafter be permanently maintained by the railway company, there must necessarily be condemnation and compensation." In further discussion the court held, as must be the case, that the taking by a railroad for railroad purposes, which falls within the scope of its condemnation privilege within the limitations of the statute, extends to all lands which it is necessary for it to take to maintain its road.

It would seem, in the light of the foregoing, that no more need be said; but the question may be raised as to whether it applies to the acquirement of lands necessary to enable a railway company to make necessary changes in its track, after the original construction. If not, we have this anomalous situation: in case of development of the country and requirement for additional and improved railroad service, rendering necessary, to that end, additional tracks, straightening of tracks, reduction of grades, increase of yard or terminal facilities, or abolishment of surface crossings, whether by its own initiative or by coercion to comply with legitimate regulations,—no power exists to acquire land needed therefor. The statute has not been so construed. Within its limita-

tions, pretty broadly construed, it has always been supposed that a railroad company's competency, under its corporate authority, to acquire land by the power of eminent domain, is a continuing one to be exercised from time to time to suit the exigencies of situations required to be dealt with.    That has been supposed to be within the letter as well as the spirit of the statute.    Sec. 1828 confers power "to acquire . . . all such real estate . . . as may be necessary for the construction, maintenance and operation of its railroad," etc. That does not mean original construction only.    It extends to new construction, as necessary from time to time.    Note the significance of the term "maintenance and operation." The provision was evidently intended to cover all the necessities of railroad "construction, maintenance and operation." So the word "construction" in sec. 1836 refers back to sec. 1828.    It includes construction at any time whether in the nature of an improvement or an addition necessary to proper maintenance and operation.    That was taken for granted in *Buchner v. C., M. & N. W. R. Co.* 60 Wis. 264, 275, 19 N. W. 56, where the court in discussing the duty of a railroad corporation under sec. 1836 to "restore every . . . highway . . . across which such railroad may be constructed, to its former state or to such condition as that its usefulness shall not be materially impaired and thereafter maintain the same in such condition against any effects in any manner produced by such railroad," said, "such continuing duty is coupled with a supposed permanent right, and necessarily imposes a new burden or servitude upon the abutting owner's private interest and property in the land constituting the highway.    Besides, there is a possibility that the" railroad company "may still further lower or elevate its track, which would necessitate further changes in order to restore the highway to a condition of usefulness."    That is to say, as the duty of the railroad company is continuing, its right to take and the condition of the taking are necessarily continuing. That has become so well established as to now be regarded as

elementary.   In 3 Elliott on Railroads, § 930, Judge Elliott
phrases the matter thus:

"It is firmly settled by the weight of authority that making
one appropriation does not exhaust the power, but new ap-
propriations of land for the construction of additional tracks,
turnouts, engine houses and other railroad facilities, may be
made from time to time as the necessities of the road may re-
quire."

The absurdity of the contrary of the foregoing is referred
to in the notes to the text above quoted, thus:

"It would be, indeed, a disastrous rule to hold that a rail-
road company must, in the first instance, acquire all the
ground it will ever need for its own convenience or the public
accommodation. . . . The greatest degree of sagacity could
hardly determine precisely what conveniences the future
might demonstrate to be necessary to do its business with fa-
cility."

No better illustration could be given of the necessity of the
statutory right of a railroad to appropriate property for rail-
road purposes than this case and similar situations liable to
arise frequently in the future.   If the right does not exist
the police power of the state could be paralyzed.   While it
might require a railroad company to abolish a dangerous
crossing, its mandate could not be observed except at the pleas-
ure of the owners of property required in order to make the
change.

Thus it seems plain, as said in the beginning, that the ap-
propriation of plaintiff's property was by the railroad com-
pany for its use.   It had power to take the property under
certain conditions.   The defendant did not have power to
take it for railroad purposes at all.   As said in *Buchner v.
C., M. & N. W. R. Co.* 56 Wis. 403, 417, 14 N. W. 273:

"The obligation of the company to make compensation for
the land thus taken and the consequent injury is just as clear
and certain as its obligation to pay the laborers it employed
to do the grading, or for the tools which they used.   All was
done for its benefit alone.   The people received no benefit of

the work—enjoyed no advantage from it that it did not have as fully and amply before the railroad was constructed."

The plaintiff, as in the *Buchner Case,* made no objection until after the appropriation was complete by reconstruction of the railroad track and cutting down of the street in order to restore the usefulness of the way at the crossing.   In the appropriation, the railroad company was a trespasser; but it was competent for the plaintiff to waive the trespass and rely on its statutory remedy to have its damages caused by the appropriation determined and paid, the same in practical effect as if the company had proceeded to acquire a right to make the appropriation by the exercise of the power of eminent domain.   Sec. 1852, Stats.   It was held, in effect, in the *Buchner Case,* that a delay on the part of the landowner until the improvement is largely completed is in effect an election to rely upon the statutory remedy.   That was expressly reaffirmed in *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515, 21 N. W. 623; *Milwaukee & N. R. Co. v. Strange,* 63 Wis. 178, 23 N. W. 432; *Taylor v. C., M. & St. P. R. Co.* 63 Wis. 327, 24 N. W. 84; *Chicago, M. & St. P. R. Co. v. Richardson,* 86 Wis. 154, 160, 56 N. W. 741; *Frey v. D., S. S. & A. R. Co.* 91 Wis. 309, 64 N. W. 1038, and many other cases.

If plaintiff ever had a cause of action against the appellant for trespass, in that it was a participant with the railway company in the appropriation of its land, the fact remains that the appropriation was for railway purposes, not for street purposes.   In such circumstances the election to waive the trespass as to the railway company and impliedly rely upon its statutory right to claim compensation upon implied contract, necessarily waived the trespass as to all concerned, leaving it no cause of action against appellant of any kind and none against the railway company, except under sec. 1852 of the Statutes.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss the same with costs.