CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, vs. CITY OF MILWAUKEE, Respondent.

*June 2—November 4, 1919.*

*Eminent domain: Change in grade of street a taking for railroad purposes: Liability of city to railroad company for damages to its property by such change.*

1. The raising or lowering of the surface of a city street pursuant to an order of the railroad commission under sec. 1797—12e, Stats., which directed separation of the railroad and street grades, in legal effect is not a mere change of grade by the municipal government, but a taking of land for railroad purposes by the railroad company, though a street grade has not been previously established and worked up to, and though the railroad commission directs that the city be responsible for damages to adjacent property. KERWIN, OWEN, and ESCHWEILER, JJ., dissent.

2. Notwithstanding an order of the railroad commission that the city assume responsibility for damages to adjacent property caused by the issuance or enforcement of said order, the city is not liable to the railroad company for damages to its freight houses resulting from the change of grade, because the order of the commission creates no new liabilities, but simply places on the city the duty of discharging a liability already existing, and there is no liability already existing when a railroad company condemns its own property for railroad purposes. KERWIN, OWEN, and ESCHWEILER, JJ., dissent.

APPEAL from an order of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a general demurrer to a complaint. The complaint alleged in substance that in response to a petition filed with the railroad commission by the city of *Milwaukee* in February, 1910, said commission on the 20th day of May, 1912 (pursuant to the provisions of sec. 1797—12e, Stats. 1911), made an order for the separation of the railroad and street grades on certain streets in the city of *Milwaukee* and directed that the Milwaukee Electric Railway & Light Company should do

the necessary grading and paving and make all necessary changes in that part of the roadway of the streets included between the outside rails of its tracks and one foot wide on each side thereof; the plaintiff all the work lying within the limits of its right of way and also the work in the public thoroughfares except that part laid on the Electric Railway & Light Company; and the city all the work not laid on the two companies, as well as assume responsibility for any alleged damages to adjacent property or business caused by the issuance or enforcement of the order. The complaint further alleged that by said order and the enforcement thereof the plaintiff's tracks as well as the whole of West Water street for some distance immediately north of the Menominee river were elevated about two and one-half feet, thereby making useless certain freight houses located upon property owned by the plaintiff fronting on said raised portion of West Water street and thus damaging the plaintiff in the sum of over $19,000, for which sum judgment is demanded. The complaint contained no allegation that there had ever been a grade established on the portion of West Water street so raised or that the street had ever been actually graded to such grade.

C. H. Van Alstine and H. J. Killilea, both of Milwaukee, for the appellant.

For the respondent there was a brief by Clifton Williams, city attorney, and Garfield S. Canright, assistant city attorney, and oral argument by Mr. Canright.

WINSLOW, C. J. Two contentions are made by the respondent in support of the order of the trial court, namely: (1) the order of the commission was merely an order changing the grade of the street, and, there being no allegation that the street had previously been brought to any established grade, there is no liability; (2) if the order be construed not as an order changing the grade, but as an

order condemning land for railway purposes, then there is no liability because the railroad company cannot collect damages of the city resulting from condemning its own property. The trial judge in sustaining the demurrer based his conclusion on the first proposition and did not pass on the second. The two propositions will be briefly considered.

1. The question whether the raising or lowering of the surface of a city street resulting from the separation of railroad and street grades is in legal effect a change of grade by the municipal government, or a taking of land for railway purposes by the railway company, was met and squarely decided in the case of *Pabst B. Co. v. Milwaukee,* 157 Wis. 158, 147 N. W. 46. It was there held that it was a taking of land by the railway company for railway purposes, and it was further held that the city of *Milwaukee* had no power under its charter to change the grade of a street in order to enable a railway company to maintain its tracks in or across the street, for the reason that this was taking of land for railway purposes. This ruling was expressly reaffirmed in *Eisler v. C., M. & St. P. R. Co.* 163 Wis. 86, 157 N. W. 534. It was made after very careful study and with appreciation of its great importance and we see no good reason for disturbing it now. It commends itself to our reason now as it did then, and we adhere to it. The application of that rule to the present case results necessarily in rejection of the city's claim that this was a mere municipal change of grade for which, under the rule stated in *Walish v. Milwaukee,* 95 Wis. 16, 69 N. W. 818, no damages would accrue to adjoining property owners, because the complaint does not allege the previous establishment of a grade and the actual grading of the street to such grade.

It is true that in both of the cases cited it appeared that there had been such previously established grade actually worked up to, but it is entirely certain that this fact cut no figure with the decision. Plainly it could not. If the act

was a taking for railway purposes in case of a street with an established grade, it must be just as much so in the case of a street or highway where no legal grade has been established. It cannot assume the form of a mere municipal improvement on one street and a railway taking on the next, depending on whether a grade has previously been established and worked up to or not. Such a rule would be absurd.

It is true, also, that in the cases cited the proceedings were begun before the enactment of ch. 540, Laws 1909 (secs. 1797—12e, 1797—12f, Stats. 1917), authorizing the railroad commission to order separation of grades, which is the chapter under which the proceedings in the present case are brought, but were begun and carried to completion under the provisions of the *Milwaukee* charter. That fact, however, only makes the cases stronger authority for the proposition that the taking for grade-separation purposes is always a railroad taking, for in those cases the city had actually passed an ordinance formally changing the grade, whereas in the present case there has been no action by the city, but the change was made by the railroad commission in the course of the proceedings to separate the grades. In legal effect, the proceedings in those cases and the proceedings under the railroad commission law, used in the present case, are essentially the same. If the change of grade is a railroad taking in one case it is necessarily so in the other. It is significant also to note that the legislature in passing ch. 540, Laws 1909 (secs. 1797—12e, 1797—12f, Stats. 1917), provided that railroad companies might take land by condemnation for the purposes of the law, thus indicating that the legislative idea as to the character of the act agreed with the idea of the court as expressed in the *Pabst B. Co. Case.*

The case of *Henry v. La Crosse,* 165 Wis. 625, 162 N. W. 174, is much relied upon to sustain the contention now under

discussion, but it seems very plain to us that it does not do so. In that case no railroad was raised or lowered and no actual change made in the street for railroad purposes; the separation of grades had been made in 1883 and the grade of a certain viaduct over the railroad then established. The approaches of the viaduct then built, however, did not come up to the established grade, and the railroad commission in ordering the building of a new viaduct required that the approaches be brought up to the grade established in 1883. The case was decided in the trial court and in this court on the ground that there had been in legal effect no change in the street, but simply a bringing of the street up to the grade established in 1883. The decision was plainly right, but just as plainly it does not affect this case.

It is suggested that, because the railroad commission directed that the city be responsible for damages to adjacent property resulting from the change in the surface of the street, the change becomes in legal effect a change of grade by the municipality. The suggestion is not without some weight, but we are satisfied that it cannot prevail. Reference to the statute (sub. 2, sec. 1797—12e) shows that the legislative idea was that the costs of the whole work, including damages for land actually taken and damages for change of grades, should be aggregated and that a certain proportion of such aggregate sum which the railway company or companies and the municipality should each bear should be fixed. In the present case certain parts of the work were parceled out to each of the parties. We do not intimate or hold that this affected the legality of the proceeding; we do not think it did; but we refer to the fact that the statute speaks of the proportion of a gross sum simply to show that the requirement of the commission that the city pay the damages to adjacent property owners must logically be construed as simply the means used by the commission to determine the city's proportion of the gross sum, and not as a

requirement that the city pay such damages *as damages* because of any liability therefor.      It amounts to no more than as if the commission had directed that the city pay ten per cent. of the gross sum and it turned out in the end that the damages to property owners amounted to just ten per cent.

2. The second contention made by the city must, however, be sustained.      The real estate taken is the real estate of the railway company.      The order of the commission to the effect that the city assume responsibility for alleged damages to adjacent property did not create any liability not theretofore existing.      *Henry v. La Crosse, supra.*      When property is taken for railroad purposes the only liability created is the liability to make compensation for it, and that is a liability of the railroad company which does the taking. But when a railway company takes its own property for railway purposes it seems absurd to speak of there being any liability to pay for it.      Paying for it would simply be taking the money out of one pocket and putting it in another.      But the city only assumes responsibility for liabilities existing by reason of the taking for railroad purposes, and as there is no such real liability so far as the property in question is concerned there is no liability assumed.

*By the Court.*—Order affirmed.

KERWIN, J. (*concurring in the result*).      The order appealed from should be affirmed, but I cannot concur in the majority opinion.

The complaint alleges that on the 21st day of February, 1910, the city of *Milwaukee* filed its petition with the railroad commission of Wisconsin in accordance with ch. 540, Laws 1909, in which petition it prayed that an order be entered by the commission requiring the separation of the grade of the railway tracks from the grade of the public thoroughfares on several streets, among others West Water street; that on the 20th day of May, 1912, the railroad com-

mission made an order for the separation of the grade of said streets from the grade of the railroad and for the apportionment and cost of work of said separation.

The complaint further alleges that the order provided:

"The Milwaukee Electric Railway & Light Company shall, at its own expense, make all necessary changes to its tracks, poles, overhead equipment and conduits, and do all necessary grading and paving on that part of the streets occupied by its tracks, to wit: all that part of the roadway included between the outside rails of its tracks and a strip one foot wide on each side thereof."

"The *Chicago, Milwaukee & St. Paul Railway Company* and the Chicago & Northwestern Railway Company shall, at their own expense, do all that part of the work lying within the limits of their respective rights of way and also all that part of the work lying within those portions of the public thoroughfares that are included between the portals of the subways, or, in places where no subway is provided, between the boundary lines of the elevation work extended across said thoroughfares, except such work as is herein laid upon the Milwaukee Electric Railway & Light Company, or other companies."

"The city of *Milwaukee* shall, at its own expense, do all that part of the work which has not been laid upon the steam railway companies, the Milwaukee Electric Railway & Light Company, or other companies as herein provided, and shall assume responsibility for any alleged damages to adjacent property or business caused by the issuance or enforcement of this order or by the prosecution of the work herein ordered."

And further provided:

"Upon and along the tracks of the *Chicago, Milwaukee & St. Paul Railway Company,* the roadbed and tracks shall be elevated from a point at or near the north line of Maple street to a point at or near the north line of Fowler street." Also: "At West Water street and Fowler street grade crossings shall be provided for street traffic, and the elevation of the tracks of the *Chicago, Milwaukee & St. Paul Railway Company* above established street grade shall not be more than two and one-half feet at West Water street."

The complaint further alleges that the plaintiff owned real estate abutting on West Water street, and that the execution of the work under the order of the commission resulted in a taking of plaintiff's property and damage thereto.

This suit was brought to recover the alleged damages which the plaintiff claims to have sustained.

The appeal in this case raises the question whether the complaint is defective in failing to allege that West Water street had ever been brought to the established grade, or that the grade of West Water street had ever been duly established.

"It is a well settled rule that where a change of grade is made by authority of law and with due care, the municipality making the change is not liable for consequential injury to abutting lots, unless expressly made so by statute or the constitution. . . ." *Henry v. La Crosse,* 165, Wis. 625, 162 N. W. 174; *Walish v. Milwaukee,* 95 Wis. 16, 69 N. W. 818; *Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039; *Dahlman v. Milwaukee,* 131 Wis. 427, 110 N. W. 479, 111 N. W. 675; *Drummond v. Eau Claire,* 85 Wis. 556, 55 N. W. 1028; *Harrison v. Milwaukee Co.* 51 Wis. 645, 8 N. W. 731; *Liermann v. Milwaukee,* 132 Wis. 628, 113 N. W. 65.

In *Colclough v. Milwaukee, supra,* at page 185, the court said:

"It was held in *Harrison v. Milwaukee Co.* 51 Wis. 647, 662, 8 N. W. 731, to be the settled law in this state that in the absence of any law giving the owners of real estate adjoining a public street or highway a right to recover damages of the city, village, town, or county in which the same is situated, on account of the change of the grade of such street or highway, no damages can be recovered on account of such change, unless the premises of the adjoining or abutting owner have been injured through the negligence of the municipality or its agents in making such change, and that such change of grade is not, in any case, the taking of private property for public use. The ground of complaint in that case was that the filling and trestle work being built

would render the highway inaccessible from the plaintiff's lands, and an injunction to prevent the execution of the work was refused.   Similar questions have been frequently before this court, and the law has uniformly been held as stated."

· This doctrine has been generally sustained in this country from the time of the decision of the supreme court of the United States in *Goszler v. Georgetown,* 6 Wheat. 593.

Sec. 8, ch. VII, of the charter of the city of *Milwaukee* provides:

"In all cases in which the grade of any street hâs been permanently established by ordinance since February 20, 1852, or shall hereafter be so established, and, after such permanent establishment thereof, and after 'such street shall have been actually graded to such established grade, the grade so established has been or shall be altered by the city, the owner of any lot or parcel of land which may be affected or injured in consequence of such alteration of grade, shall be entitled to compensation therefor, . . ."

This provision seems to require that the grade  not only be established, but that the street•be graded to the established grade, before any right of action for damages on account of change of grade exists.

The instant case was a proceeding for the separation of grade of the plaintiff's railroad tracks from the grade of certain streets in the city of *Milwaukee* and the apportionment of the expense between the railway company, the electric company, and the city of *Milwaukee.*

The power of the city to proceed and carry on through the railroad commission separation of grades is a valid exercise of municipal authority.

The plaintiff owns abutting property on West Water street.   The complaint does not allege that the grade of West Water street was ever established, or that West Water street had ever been brought to an established grade.   In the instant case the separation of grades was not a change

of grade of the street for railroad purposes, but for municipal purposes. The grade of the street never having been established, the city had a right to change it in a proceeding through the railroad commission for street purposes, and such change of grade does not constitute a taking which would entitle abutting owners to damages. This doctrine is well settled. *Henry v. La Crosse,* 165 Wis. 625, 162 N. W. 174, and cases heretofore cited.

*Buchner v. C., M. & N. W. R. Co.* 56 Wis. 403, 14 N. W. 273 (*S. C.* 60 Wis. 264, 19 N. W. 56); *Pabst B. Co. v. Milwaukee,* 157 Wis. 158, 147 N. W. 46, and *Eisler v. C., M. & St. P. R. Co.* 163 Wis. 86, 157 N. W. 534, are relied upon in the majority opinion. They are not in point.

In the *Buchner Case* the taking and damages flowed from an original taking for railway purposes. The railway company entered upon the highway in the original construction of its road, cut down the highway on its own initiative, dug up and carried away the soil of the abutting owner, and under the statute, of course, there was a taking of the land of the abutting owner. • The case is based upon the ground that the railway company in the original construction of its road took and damaged the property of the abutting owner.

The *Pabst B. Co.* and *Eisler Cases* are distinguishable from the case at bar in two particulars: (1) there had been an established grade, and (2) the change in grade was made for railway purposes. The opinions in these two cases are based upon these propositions. It is clear that, where a grade had been established, any change made either by the municipality or the railway company, or both, entitled the abutting owner to damages as for an original taking. But it is equally clear under all authority that where the grade has not been established the municipality may change the grade without liability to the abutting owner for such change.

In the instant case, upon the undisputed facts, the change

of grade was instituted, carried on, and consummated by the municipality without the intervention of the railway company. The railway company did not take part in instituting the proceeding and never became a party to it except in so far as it was ordered to contribute to the expense of making the change by doing a part of the work. The whole proceeding was a municipal affair and carried to completion by the municipality.

Before the present proceeding was started for the change of grade the railway company was in the street, its road constructed, completed, and all damages paid for the taking and construction of its road in the street. It sought no change in grade. The fact that the change in grade made by the city may benefit the railway company does not make the change for railway purposes. It is elementary that one cannot be compelled to pay for a benefit bestowed without his consent and in the absence of law authorizing it.

Upon the undisputed facts in this case there is no law authorizing the assessment of damages sustained (if any) to abutting owners against the railway company. This is recognized in the order of the railroad commission, which provides that the city of *Milwaukee* "shall assume responsibility for any alleged damages to adjacent property or business caused by the issuance or enforcement of this order or by the proper prosecution of the work herein ordered." If any damages be recoverable by abutting owners, the same are a claim against the municipality because the proceeding was exclusively a municipal proceeding. To hold that abutting owners can recover damages against the railway company as for a taking upon a proceeding by the municipality to improve the streets for public travel in a case where the municipality had a right to change the grade without liability because the railway company merely performed its duty in complying with an order of the railroad commission, is absurd.

Of course if it be admitted that the change of grade was for railway purposes and the grade of the streets had been established, then the case would be within the *Pabst B. Co.* and *Eisler Cases.*

But, as before observed, upon the record here the grade had not been established and the change was not made for railway purposes, but for municipal purposes. On the grounds hereinbefore stated, in my opinion the order should be affirmed.

OWEN, J. (*concurring in the result*). Conceding, as is assumed in the opinion of the court, the validity of the order of the railroad commission making it the duty of the city of *Milwaukee* to bring about a change in the grade of the street to enable the separation of the crossing, I cannot agree that the taking was for railroad purposes. It is my conception that there can be no taking for railroad purposes except for the actual construction, operation, and maintenance of a railroad or to enable the railroad company to discharge some legal duty imposed upon it. At least no decided case in this state indicates that there can be a taking for railroad purposes under any other circumstances. That a taking of property to enable the construction, operation, or maintenance of a railroad is a taking for railroad purposes, will be conceded at once. In order to hold that a taking which is not essential or convenient for the construction, operation, or maintenance of the road constitutes a taking for railroad purposes it is necessary, it seems to me, that the taking be in the performance by the railroad company of some legal duty imposed upon it.

There are a number of decisions in this state, some of which are cited in the opinion of the court, holding a taking to be for railroad purposes although, obviously, the taking was not for the purpose of enabling the construction, operation, or maintenance of the railroad. In all such cases,

however, it was found that the taking was for the purpose
of enabling the railroad company to discharge a duty im-
posed upon it by law. Perhaps a brief reference to those
cases will serve to illustrate the principle I have in mind.
First in order is the case of *Buchner v. C., M. & N. W. R.
Co.*, which was twice before this court and will be found
reported, first in 56 Wis. 403, 14 N. W. 273, and, second,
60 Wis. 264, 19 N. W. 56. In that case the railroad com-
pany in the original construction of its road crossed a high-
way. Under the provisions of sec. 1836, if indeed not by
the common law, it was the duty of the railroad company
to restore the highway to its original state of usefulness.
Where the railroad crossed the highway the track was de-
pressed a number of feet below the surface. In order to
restore the highway to its original state of usefulness it
was necessary to cut down the grade of the highway in
front of Buchner's property. He claimed damages for the
taking of his land from the highway. The question in-
volved was whether the taking was for a railroad or a high-
way purpose. If for a railroad purpose, then it was in the
nature of an original taking for which the plaintiff had not
been compensated when the property was taken for highway
purposes, entitling him to damages. The opinion of the
court, on both appeals, held that the taking was for a rail-
road purpose.

A careful reading of the opinions in that case, and espe-
cially that of Justice CASSODAY in the 60th Wisconsin, can
leave little doubt that the taking was held to be for a rail-
road purpose because of the legal duty devolving upon the
railroad company to restore the highway to its original con-
dition.

The railroad company secured its authority to build the
railroad from the state. The state granted to it the right
to cross all highways, but, as a condition, required that it
restore such highways to their original state of usefulness.

This was an essential part of the construction of the railroad. In order to complete the construction of the road it was necessary not only to grade the roadbed and lay the track, but to restore all highways crossed by it to their original state of usefulness. This was something that it was required to do in order to exercise the right of building the road at all, which right was conferred upon it by law. The idea that the duty imposed by law upon the railroad company to restore the highway to its original state of usefulness was the element which made the taking one for railroad purposes, permeates the opinion in the 60th Wisconsin, as a few excerpts therefrom will abundantly disclose. On page 273 of the opinion it is said:

"A railway company gets its life and authority from the statute, and only for the purposes named in the statute. Such a company has no vicarious power to act for and in behalf of the supervisors in changing the grade of a street, under the highway laws of the state. Whatever right it may have in that regard is imposed upon it as a condition of constructing its railroad. Its right to take private property for its use is only by virtue of its chartered rights, and then only for the purposes therein designated."

And on page 276:

"No one would, we apprehend, claim that the clause of the statute requiring condemnation and compensation does not apply when the railroad is constructed 'along or upon a highway,' nor to so much of the street occupied by the railroad in crossing a highway. So it seems to us that it applies to that portion of the highway which the railway company, as a condition of constructing its railroad across, along, or upon a highway, is required to restore to its former condition of usefulness, and thereafter to maintain in that condition."

And on page 277:

"The liability of the company is not limited to its absolute physical necessities, but is measured by its imperative *legal* necessities."

We will end our consideration of the *Buchner Case* by simply saying that the taking of property in a highway in order to conform the grade of the highway with that of the roadbed of the railroad company which crosses the highway is not, obviously, a taking to enable the company to construct, operate, or maintain its railroad. It is a taking made necessary to restore and maintain the highway as a course of travel. Because the duty of so restoring the highway to its original condition was imposed upon the railroad company, such restoration became a railroad undertaking, a part of the construction of the road as much as the grading of the roadbed or the laying of its rails, and property taken therefor was taken for a railroad purpose.

The subsequent cases of *Shealy v. C., M. & N. R. Co.* 72 Wis. 471, 40 N. W. 145, and *S. C.* 77 Wis. 653, 46 N. W. 887, but follow the rule of the *Buchner Case.* The cases of *Pabst B. Co. v. Milwaukee,* 157 Wis. 158, 147 N. W. 46, and *Eisler v. C., M. & St. P. R. Co.* 163 Wis. 86, 157 N. W. 534, are relied on in the opinion of the court in support of the proposition, which dominates the opinion, that the "taking for grade-separation purposes is always a railroad taking." If those cases establish that proposition, then it must be conceded that the opinion of the court is well grounded. However, I do not so understand them. The consideration which induced the court to hold in those cases that the takings there in question were takings for railroad purposes was the same consideration which prompted the decision in the *Buchner Case,* and that is that the law imposed upon the railroad company the burden of bringing about a separation of the crossings there involved. In those cases the separation was brought about pursuant to ordinances of the common council of the city of *Milwaukee* compelling the railroad companies to separate the crossings. These ordinances were enacted pursuant to a provision of the charter of the city of *Milwaukee* (Laws 1874, ch. 184,

subch. IV, sec. 3, sub. 48) conferring upon the city council power "to require railroad companies to construct and maintain at their own expense such bridges, viaducts, tunnels, or other conveniences, at public railroad crossings, as the common council may deem necessary." It was held in *Superior v. Roemer,* 154 Wis. 345, 141 N. W. 250, that similar language in the charter of the city of Superior not only laid the entire burden of bringing about the separation of grade crossings upon the railroad company, but also inhibited the city from contributing anything to the expense thereof, and the same ruling is made with reference to this provision in the charter of the city of *Milwaukee* in *Application of Kaiser,* 171 Wis. 40, 174 N. W. 714, 176 N. W. 781.

I think the decisions in the *Pabst B. Co.* and *Eisler Cases* were entirely right, but I do not think they are controlling here. As we have seen, the law applicable to the situation considered in those cases laid upon the railroad company the duty of accomplishing the grade separations. The law made it a railroad undertaking, the same as was that dealt with in the *Buchner Case,* and any property taken in the performance of such duty was necessarily taken for railroad purposes.

In this case the order of the railroad commission imposes upon the city the burden of bringing about the change of grade in the street in order to accomplish the separation of the crossings. Assuming, as is assumed in the opinion of the court, that the statute authorizes the railroad commission to make this order, then it imposes upon the municipality the duty of accomplishing the change of grade in the street as much as though it were directly imposed by the statute. As said in the opinion in *Application of Kaiser, supra,* the legislature has plenary power to bring about an elimination of dangerous grade crossings, and that in making provision therefor it may impose the entire expense upon the railroad company, or upon the municipality, or

apportion it between the two.   The law under which the
railroad commission acted authorizes the commission to or-
der a separation of dangerous grade crossings and to appor-
tion the expense between the railroad company and the
municipality.   It is perhaps more accurate to say that the
order here apportioned responsibility or duty rather than
expense, and the duty imposed upon the municipality was
to bring about a change in the grade of its street so as to con-
summate a safe crossing over the railroad tracks.   Munici-
palities have inherent power to change the grades of their
streets, and the order of the railroad commission laid upon
the city of *Milwaukee* no duty which it did not have the
power to perform.   The change of grade in a street being
a well-recognized and oft-exercised power of a municipality,
I can see no reason for saying that, when that power is exer-
cised to bring about a safe crossing over railroad tracks, the
taking of property necessary therefor becomes a taking for
railroad purposes, in the absence of any law imposing any
duty in that respect upon railroad companies.   Can it be
said that if the legislature of this state, in its wisdom, laid
the entire burden of bringing about the separation of grade
crossings upon the municipalities, the change of grade by a
municipality for the purpose of accomplishing such separa-
tion constitutes a taking of property for railroad purposes?
Such a contention, manifestly, would be absurd.   Is it more
logical to say that, where the legislature provides for an ap-
portionment of burden and responsibility in bringing about
the separation of grade crossings, the change of grade in the
street by a municipality, where that burden and responsi-
bility is placed upon the municipality, creates a taking for
railroad purposes?   Such logic necessarily leads to the con-
clusion that while the order made by the railroad commis-
sion in this case is a lawful order, nevertheless it has im-
posed upon the city of *Milwaukee* a burden which it has no
power to carry·out, because it cannot condemn property for
railroad purposes.   I think, therefore, there is neither logic

nor authority for the proposition that the taking of property for grade-separation purposes is always a railroad taking, and in my opinion it cannot be held to be a railroad taking unless the taking is by the railroad company itself to enable it to comply with a legal duty imposed upon it.

If the idea which dominates the majority opinion is correct, then I should like to inquire why it is that in *Application of Doss,* 171 Wis. 52, 174 N. W. 718, a companion case to *Application of Kaiser, supra,* both of which are decided herewith, it was held that no liability existed upon the railroad company for the taking of property on the south side of Oklahoma avenue to bring about a separation of grade crossings, while in the *Kaiser Case* it was held that it was liable for property taken on the north side of Oklahoma avenue? If a railroad company is liable under all circumstances, without any reference to its legal responsibilities or duties, for property taken to bring about a change of grade in a street to consummate a separation of grade crossings, then why was not the railroad company liable for property taken situated in the town of Lake as well as for property taken situated in the city of *Milwaukee?* The diametrically opposite conclusions reached in those two cases were due entirely to the fact that the law then existing imposed the entire burden of bringing about a separation of crossings in the city of *Milwaukee* upon the railroad company, while no such law could be found imposing similar responsibilities upon the railroad company for bringing about a separation of grades in towns. But if the dominating idea of the majority opinion in this case "that the taking for grade-separation purposes is always a railroad taking" is correct, then the railroad company should have been held liable for the taking on the town of Lake side of Oklahoma avenue as well as on the city of *Milwaukee* side. The decision in this case is utterly inconsistent, it seems to me, with the deci-

sions in those two cases. If the decision here is correct, then the decision in *Application of Doss* is wrong; and if the railroad company should be held liable for compensation in *Application of Doss,* it would have to be held so liable in the absence of any statutory authority imposing liability upon it, and I feel quite safe in making the assertion that no such liability existed at common law.

It is my conclusion, therefore, that whether or not a taking for grade-separation purposes constitutes a railroad taking depends upon whether the law imposes upon the railroad company a legal duty to bring about the separation of crossings so that the taking is in the discharge of a railroad duty; and that where the law imposes upon the municipality the duty of bringing the street to an appropriate grade the undertaking is a municipal purpose and the taking necessary therefor is a municipal and not a railroad taking. In the *Pabst B. Co.* and *Eisler Cases* the law imposed upon the railroad company the entire burden of bringing about a separation of grade crossings, and any property taken in the accomplishment of such separations was taken for railroad purposes. The same is true in *Application of Kaiser.* But for the reason that no such duty was imposed upon the railroad company in *Application of Doss,* the taking was held not to be for a railroad purpose and no liability devolved upon the railroad company. It follows that, in my opinion, the taking here was a taking for a municipal purpose, and that, because a grade had never been established in the street in question, abutting property owners are entitled to no damages for the taking. *Harrison v. Milwaukee Co.* 51 Wis. 645, 8 N. W. 731; *Drummond v. Eau Claire,* 85 Wis. 556, 55 N. W. 1028; *Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039; *Walish v. Milwaukee,* 95 Wis. 16, 69 N. W. 818; *Dahlman v. Milwaukee,* 131 Wis. 427, 439, 110 N. W. 479, 111 N. W. 675; *Liermann v. Milwaukee,* 132 Wis.

628, 113 N. W. 65; *Henry v. La Crosse,* 165 Wis. 625, 162 N. W. 174.

As stated in the majority opinion, much reliance has been placed upon the *Henry Case, supra.*   To my mind, that case is very much like the *Pabst B. Co. Case,* but treated in the opinion of this court from a different viewpoint.   In that case as well as in the *Pabst B. Co. Case* an abutting property owner brought suit against the city for damages resulting from a change of grade in the street.   In the *Pabst B. Co. Case* it was decided that he was not entitled to damages because the taking was not a taking for railroad purposes. In the *Henry Case* the plaintiff was denied recovery because it was held that there had been no change in an established grade, a fact which it was necessary for him to prove in order to recover against the city.   The action in the *Henry Case* being one against the city, and it being established that there was no change of grade, it followed that the city was not liable, and that ended the case.   The question decided in the *Pabst B. Co. Case* was never reached or discussed in the *Henry Case.*

In my opinion the order in this case should be affirmed, but not upon the grounds stated in the majority opinion.

ESCHWEILER, J. (*concurring in the result*).   I agree that the order below should be affirmed, but not upon the grounds stated in the majority opinion.   I agree with what has been said by Justices KERWIN and OWEN in their opinions filed herewith.