ULLRICH and others, Respondents, vs. KENOSHA COUNTY and others, Appellants.

*June 4—July 1, 1935.*

For the appellants there was a brief by *John P. McEvoy*, district attorney of Kenosha county, and *William Ryan* of Madison, attorney for the Wisconsin Highway Commission, and oral argument by *Mr. Ryan*.

For the respondents there was a brief by *Baker, Juliani & Baker* of Kenosha, attorneys, and *William E. Rodriguez* of Chicago, Illinois, of counsel, and oral argument by *M. Eugene Baker*.

NELSON, J.   The petition which instituted these proceedings was signed by William M. Ullrich and Helena Ullrich. It was represented and shown therein that William M. Ullrich and Helena Ullrich were the owners of certain real estate situated in Kenosha county, Wisconsin; that on or before March 27, 1931, the County Highway Committee of Kenosha county had determined the necessity of taking for highway purposes the real estate described therein; that on March 27, 1931, the said highway committee had made and signed an award of damages to the petitioners which award was approved by the State Highway Commission; that the petition-

ers were informed and verily believed that said award of said County Highway Committee was never filed with the clerk of Kenosha county; that thereafter the highway authorities *took possession of the land described;* that the petitioners desired to have the damages for the taking of the said real estate ascertained and determined. Other persons were by stipulation made parties to this proceeding. In the answer of the defendant it was admitted that the plaintiffs were the owners of the premises and the owners of liens thereon, but denied that the lands had been taken for highway purposes. It was alleged that the taking was for railroad purposes. It was further alleged that for some years prior to November 30, 1931, the real estate described in the plaintiffs' petition, except as thereinafter stated, constituted a public highway and was known as State Trunk Highway No. 50; that the State Highway Commission of Wisconsin, by a resolution adopted on October 16, 1931, and amended on November 20, 1931, determined that, for the proper construction and improvement of said State Trunk Highway No. 50, at the place in question, it was necessary to make certain relocations, to secure additional rights of way, and that the said commission did relocate said portion of said State Trunk Highway No. 50 in accordance with a plat marked "Plat of Right-of-Way Required. State Aid Project No. 2079, Silver Lake Grade Separation, S. T. H. No. 50, Kenosha County;" that the said relocation of said highway at said place included lands formerly used for a highway at said place, and in addition thereto included lands on each side of the highway as formerly located, which highway as relocated included the lands described in the petition, and resulted in a widening of the highway at that place; that said relocation was made pursuant to the provisions of sec. 83.08 of the statutes; that on September 27, 1931, the County Highway Committee of Kenosha County made an award for the lands taken and as de-

scribed in the petition; that said award was made pursuant to sec. 83.08 of the statutes; that the land described in the petition included a portion of said State Trunk Highway No. 50 as relocated, where it crossed the right of way of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company; that the construction and improvement of said highway at said place and the taking of said lands described in the petition was for the purpose of effecting a separation of the grade of said highway from the grade of the tracks of said railway company; that after said highway had been relocated and said award made said construction and improvement of said highway was so made as to effect a separation of the grades of said state trunk highway and the tracks of said railway company, and was accomplished by constructing an overhead crossing at said place; that said overhead crossing was constructed for the purpose of eliminating dangers to the public and of eliminating a source of anxiety and expense to said railway company; that said work was done and performed in the exercise of the police power of the state pursuant to the statutes, and that whatever land or property was taken or whatever rights or property were taken, was a taking for railroad purposes, and did not give the owners or any persons interested in or having a lien on the lands described in the petition any right to compensation from the defendants or any of them, and that whatever right the plaintiffs or any of them may have to compensation is a right against said railway company and not against these defendants or any of them.

Eliminating all unnecessary allegations from the petition, it alleges that the petitioners (the plaintiffs here) owned and have an interest in certain real estate situated in Kenosha county; that before March 27, 1931, the County Highway Committee of Kenosha County determined the necessity of taking said lands for highway purposes; that the County

Highway Committee signed an award of damages, which award was approved by the State Highway Commission, but which award was never filed with the county clerk of Kenosha county; that thereafter the highway authorities took possession of the lands. The answer does not deny that the defendants took possession of the plaintiffs' lands, but alleges that the taking of the plaintiffs' lands was for railroad purposes. The defendants contend that since the relocation of the highway was for the purpose of eliminating a grade crossing and constructing an overhead crossing in its place, the taking of the plaintiffs' lands was for railroad purposes, and that the plaintiffs must look to the railway company, not to the public, for compensation. They base their contention on four cases: *Pabst Brewing Co. v. Milwaukee,* 157 Wis. 158, 147 N. W. 46; *Eisler v. Chicago, M. & St. P. R. Co.* 163 Wis. 86, 157 N. W. 534; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 170 Wis. 77, 174 N. W. 719; and *Application of Kaiser,* 171 Wis. 40, 174 N. W. 714, 176 N. W. 781. In our opinion, those cases involved situations quite unlike the present, and therefore do not rule the present controversy.

In the *Pabst Case, supra,* the plaintiff sought to recover certain damages which it asserted resulted from an illegal change in the grade of a street. The city contended that the acts complained of were committed wholly by the railway company in complying with an ordinance of the city. It was held that the street was cut down for railway purposes. Although the court did not specifically mention a certain provision of the charter of the city of Milwaukee (Laws of 1874, ch. 184, subch. IV, sec. 3, subsec. 48), it was without doubt considered, as it was then in force and effect. That provision conferred upon the city council the power "to require railroad companies to construct and maintain at their own expense such bridges, viaducts, tunnels, or other conveniences, at public railroad crossings, as the common council may deem

necessary." It was, no doubt, pursuant to that charter provision that the ordinance was enacted, which compelled the railway company to elevate its tracks. See opinion of Owen, J., concurring in the result reached in *Chicago, M. & St. P. R. Co. v. Milwaukee, supra,* p. 88; *Application of Kaiser, supra,* p. 43.

The *Eisler Case, supra,* was a condemnation proceeding, instituted by the owner of real estate for the purpose of having determined the compensation to which he was entitled by reason of the taking of his land by the railroad company in raising its tracks across a certain avenue. In 1906, the railway company had been compelled by the city of Milwaukee to elevate its tracks above the avenue and to lower the latter, which necessitated the lowering of the grade in front of plaintiff's land. It was again held that such taking was for a railway purpose. No reference was made in the opinion to the charter provision, *supra,* or to any specific ordinance. The court contented itself with the statement:

"In 1906, the railway company was compelled by the city of Milwaukee to elevate its tracks above the avenue and to lower the latter so that it became a subway under the track. In making the subway it became necessary to lower the established grade of the avenue."

In *Chicago, M. & St. P. R. Co. v. Milwaukee, supra,* the railway company sought to recover from the city damages asserted to have resulted from the raising of the grade of a street in front of its warehouse. In that case there was involved an order of the railroad commission made pursuant to the provisions of sec. 1797—12e, Stats. 1917, which order required the railway company to separate the railroad and street grades on certain streets in the city of Milwaukee. It was held by a divided court, following the decisions in the *Pabst* and *Eisler Cases,* that the raising or lowering of the surface of a street occasioned by the separation of railroad and street grades is, in legal effect, not a change of grade by

the municipality, but a taking of land by the railway company for railway purposes, and that the city of Milwaukee had no power under its charter to change the grade of a street in order to enable a railway company to maintain its tracks in or across the street, for the reason that this was a taking of land for railway purposes. In speaking of the proceedings in the *Pabst* and *Eisler Cases,* it was said that they "were begun and brought to completion under the provisions of the Milwaukee charter." The court, after holding that, in legal effect, the proceedings taken by the city under its charter provisions and the proceedings under sec. 1797—12e, Stats. 1917, were essentially the same, said:

"If the change of grade is a railroad taking in one case it is necessarily so in the other. It is significant also to note that the legislature in passing ch. 540, Laws of 1909 (secs. 1797—12e, 1797—12f, Stats. 1917), provided that railroad companies might take land by condemnation for the purposes of the law, thus indicating that the legislative idea as to the character of the act agreed with the idea of the court as expressed in the *Pabst B. Co. Case.*"

OWEN, J., in a vigorous dissenting opinion, took issue with the statement contained in the majority opinion "that the taking for grade-separation purposes is always a railroad taking."

*Application of Kaiser, supra,* was another condemnation proceeding instituted by a property owner for the purpose of having the amount of his damages ascertained, which resulted from a change in the grade of a street made necessary by the construction of a subway under the tracks of the Chicago & North Western Railway Company. It was there held that a certain ordinance adopted by the common council of the city of Milwaukee, which was partly contractual in nature, should be construed as a direction or an order of the common council to the railway company to construct the subway pursuant to the power conferred upon it by its charter.

Mr. Justice Owen, speaking for the court, concluded the opinion thus:

"The foregoing considerations bring this case squarely within the doctrine not only of *Superior v. Roemer,* 154 Wis. 345, 141 N. W. 250, but that of *Pabst B. Co. v. Milwaukee,* 157 Wis. 158, 147 N. W. 46, and *Eisler v. Chicago, M. & St. P. R. Co.* 163 Wis. 86, 157 N. W. 534, in which latter cases it was held that, where the duty to separate grade crossings rests upon the railroad company, property taken in consummating the separation is taken for railroad purposes and must be compensated for by the railroad company. It follows that the taking here was a taking for a railroad purpose and, no compensation having been made for the property taken, the petitioner is entitled to maintain these proceedings."

It is clear that all of the four cases reviewed involved the elevation of railroad tracks and the incidental construction of subways thereunder, by railway companies, upon which rested the duty to separate grade crossings. In such situations there can be no doubt that the obligation to compensate persons who have sustained damages resulting therefrom is upon the railroad company. In the case at bar, the raising or lowering of railroad tracks, pursuant to the order of a municipality having power to so order, is not involved. This case involves an overhead crossing constructed by the public authorities pursuant to the provisions of recently enacted legislation, the object of which is to eliminate the dangers and hazards which exist at all railroad grade crossings. This legislation has been enacted to meet a situation occasioned by a remarkable development in the building of good roads over which heavy automobile traffic commonly moves at speeds, which a few years ago would have been considered nothing less than reckless. Legislation looking to the separation of grade crossings springs from the recognized duty of the state to protect the public from dangerous grade crossings and to eliminate the hazards thereof as rapidly as possible, considering the great average cost of such structures. The legisla-

ture, in its wisdom, has recognized the equity and justice of apportioning the cost thereof between the public, the railways, and the municipalities benefited. The legislature has recognized that the financial burden of building such modern concrete structures as are now required to be built should not in justice be borne by the railroads alone, but should be borne by the public, the railroads, and the municipalities benefited.

Sec. 84.05, authorizes the State Highway Commission to determine the necessity of a grade separation, and, in conjunction with the Public Service Commission, to make a plan of the changes proposed and an estimate of the cost thereof, including the cost of needed right of way, and to make an agreement with all persons concerned as to matters involved in the plans, including the portion of the cost of the contemplated work which the persons shall defray. In case the highway commission finds it impossible to deal by contract with the persons concerned as to the proper distribution and payment of the cost of the work, the highway commission shall lay the matter before the Public Service Commission. The Public Service Commission shall thereupon review the whole proceedings, hold a hearing or hearings thereon, in accordance with the provisions of secs. 195.28 and 195.29, and fix the portion of the cost which is to be paid by the persons or corporations concerned, and the portion of the cost, if any, to be paid by the public, which portion shall be paid from the highway construction fund. The Public Service Commission shall determine the benefits, if any, which will inure to highways not on the trunk highway system, and apportion and charge to the units of government responsible for the construction of such highway a fair portion of the cost. Sec. 84.04 (3) provides:

"Each county may acquire any lands needed to relocate or widen any highway to be improved. Such lands and any other needed lands may be acquired by the county in the

manner provided by section 83.07 or section 83.08 or by chapter 32."

Sec. 195.29 (1), referred to in sec. 84.05, relates to the procedure before the Public Service Commission when its jurisdiction is invoked in such matters. Sec. 195.29 (2), provides:

"The commission shall fix the proportion of the cost and expense of alterations, removals and new crossings, or any other work ordered, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public street or highway shall sustain by reason of a change in the grade of such street or highway, or by reason of the removal of obstructions to view at such crossings, to be paid or borne by the railroad companies and the municipalities in interest. In fixing such proportion, the commission may order such cost and expense so apportioned to be paid by the parties against which the apportionment shall be made."

The highway commission may on its own motion initiate proceedings relating to the separation of highways crossing railroad tracks at grade, and have the cost of such work apportioned by the public utility commission. These statutes unquestionably show a legislative intention to apportion the cost of such structures between the public, the railroads, and the municipalities benefited. Such structures as are now being built under existing law cannot be regarded as serving railway purposes alone. The public has such a vital interest in the matter of eliminating grade crossings as to justify the expenditure of public funds to render such structures safe, adequate, convenient, and permanent.

It may be noted in passing that ch. 540, Laws of 1909 (secs. 1797—12e, 1797—12f, Stats. 1917), which provided that railroad companies might take land by condemnation for the purposes of the law, which sections were given significance by WINSLOW, C. J., in *Chicago, M. & St. P. R. Co. v. Milwaukee, supra,* is no longer found in the statutes. It

is significant that neither under sec. 84.05 nor under sec. 195.29 is there any provision for acquiring by condemnation the lands required. Sec. 84.04, sub. (3), permits the county to acquire lands needed to relocate or widen any highway to be improved, in the manner provided by sec. 83.07 or sec. 83.08, or by ch. 32. Secs. 83.07 and 83.08, relating to the acquisition of lands, quarries, gravel pits, and right of way by counties, clearly show that the legislature intended that the title to any lands so purchased or taken for such highway purposes should be taken in the name of the county.

It is our conclusion that lands acquired or taken by a county for the purpose of constructing, pursuant to law, an overhead crossing are not taken exclusively for railroad purposes; that the contention of the defendant, that the taking of the plaintiffs' lands and the interests of others therein, was exclusively a taking for railroad purposes, is not sound.

In the petition herein, it is alleged that the plaintiffs are the owners of certain lands and interests therein; that the highway authorities took possession of said lands. These allegations are sufficient to authorize the institution by the plaintiffs of condemnation proceedings for the purpose of having their damages ascertained. Sec. 32.15, Stats. 1933. Since the contention of the defendants that the taking of the plaintiffs' lands was for railroad purposes is not sound, the allegations of the answer did not state a defense to the plaintiffs' petition. For the reasons stated, the order sustaining the plaintiffs' demurrer to the answer was properly sustained.

*By the Court.*—Order affirmed.